BOWSHER v. GRAND RAPIDS & INDIANA RAILWAY CO.

1. RAILROADS—NEGLIGENCE—CROSSING ACCIDENT.

Evidence that plaintiff's 18 months old child was killed at defendant's crossing, that the statutory crossing signals were not given, and, on defendant's behalf, that the child might have been caught and thrown by the suction of the train, that small objects could not be seen at the crossing from an approaching engine, because of the fences and cattle guards and that the motion of the train interfered with accurate vision, the engineer and fireman both claiming that they kept

a careful lookout on the date and place in question, *held*, insufficient to sustain a verdict finding the failure to maintain a proper lookout was the proximate cause of the accident. [1]

2. SAME—EVIDENCE.

When inferences of fact are permitted to outweigh positive testimony of witnesses not impeached or otherwise disputed, the proven or admitted facts and the necessary or reasonable inferences therefrom should be inconsistent with such testimony.

3. SAME—SIGNALS—NEGLECT TO BLOW WHISTLE.

It could not be said, however, as a matter of law, that the giving of statutory signals for the crossing could have had no effect on the child: whether the signals were omitted, and whether this negligence caused the accident, were questions for the jury.

Error to Kalkaska; Lamb, J. Submitted January 13, 1913. (Docket No. 84.) Decided March 20, 1913.

Case by Dan Bowsher, as administrator of the estate of Lillie Bowsher, deceased, against the Grand Rapids & Indiana Railway Company for the negligent killing of decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*James H. Campbell* and *J. L. Boyd*, for appellant.

*Ernest C. Smith*, for appellee.

OSTRANDER, J. Plaintiff lived on the north side of a highway, 20 to 25 rods east of the defendant's railroad, 3 miles north of the village of Kalkaska, in Kalkaska county. The railroad, which there runs north and south, crosses the highway at right angles. This action is for damages for the alleged negligent killing of plaintiff's 18 months old daughter at the crossing August 13, 1910. The negligence of defendant alleged in the declaration is a failure to blow the whistle for the crossing; failure to

---

[1] Care required of railroad companies to prevent injuring young children on track, see note in 25 L. R. A. 784.

ring the engine bell, and failure to maintain a proper look-out from the engine for persons or objects upon the crossing. The trial court was of opinion that the failure to give the statute signals could not be considered to be the proximate cause of the injury, and confined the jury, upon the subject of defendant's negligence, to the question whether the killing of the child was—

"The direct and natural consequence of the failure of the engineer and fireman on the engine of said train to keep and maintain a reasonably careful lookout to avoid injury to persons on said highway crossing."

The jury returned a verdict for the plaintiff, upon which judgment was entered.

The single question presented by appellant is whether there was any testimony to support the verdict. The substance of all testimony given is returned. It appears that the child had strayed from her home. Looking for her about the premises and not finding her, the mother went upon the highway to the railroad. She discovered the child, fatally injured, but still alive, lying on the south side of the highway, east of and a few feet from the railroad track, near or against the fence. The material circumstances and the existing conditions proven may be stated in few words. The child weighed from 20 to 25 pounds, and was between $2\frac{1}{2}$ and 3 feet in height. She is otherwise described as the ordinary child of that age. She could walk. No witness was produced who claimed to have seen the child after she left the house and before her body was discovered by the mother. Defendant's fast passenger train, south bound, had just passed the crossing. The mother saw it when she was looking for the child. The time was 4:22 or 4:23 in the afternoon. The train was on time and running somewhat faster than 40 miles an hour—from 40 to 50 miles. The child's neck and left arm were broken, her great toe split, there was a bruise over her left eye, and a mark, a dent, on her left hand. All evidences of injury, except the broken neck, were on the left side of her body. The skin was not

broken, nor was the clothing torn; but the clothing was soiled and dirty. The child wore a string of very small beads, glass beads, some of which the mother found on her person, and some were afterwards found 3 feet, and some 5 or 6 feet, from the east rail of defendant's track, and, as the record is understood, south of the wagon road and near the fence. Whether search was made for beads in other places is not shown. Footprints of a child, going west, were found 6 feet south of the wagon road and about 16 feet from the south highway fence, going to the ends of the ties. Whether they were made by this child, or corresponded with others made by her, does not appear.

The defendant's roadbed at the crossing was slightly above the natural level of the land, and the traveled way was graded to correspond with the level of the tracks. There were cattle guards on each side of the highway; and fences, parallel with the highway, and on each side of it, were built from the cattle guards, at a point about 5 feet from the rails, to the right of way lines and fences. These fences were $4\frac{1}{2}$ feet high, constructed of posts and boards, the boards placed 6 inches distant from each other. From the posts nearest to the cattle guards, running towards the track, wing fences were in place, the bottom boards of which were longer than and approached nearer to the rails (to within 3 feet) than the boards above them. The fences were in good condition. The railroad for a mile north of the crossing was straight, and, except the fences, there was nothing to obstruct the view. The grade of the railroad descended slightly to the south. The engineer and fireman in charge of the locomotive on the occasion in question gave testimony. Both testified that they did not see the child, or know until the next day that a child had been injured. They both testified, also, that the usual and a careful lookout was maintained from the locomotive at the crossing, that the train was on time, and nothing occurred to interfere with the maintenance of a proper lookout.

None of the testimony tending to establish the foregoing

facts is disputed by oral testimony. Other testimony given was that on the morning of the trial a witness placed a piece of board 8 feet from the tracks, went up the tracks 600 feet, and from that point "I could just see the edge of the board without looking through the fence." The size of the board and how it was placed were not shown. The wing fences next to the track were not then in the condition they were in when the child was injured. A witness testified that he placed a board 6 inches wide and 2 feet high in the center of the highway 20 feet from the track. Going north on the track 150 feet, he could, he said, see, the board through the fence. From a point 400 feet north he could not see the board at all. Defendant's engineer testified that his position in the cab of the locomotive was some nine feet above the rails, or ground; that approaching a crossing he must be pretty close to it to see over the crossing fence, within 100 feet to see the traveled part of the highway over the fence; that from the cab one cannot see the highway on both sides of the highway for 16 feet from a distance of 600 feet; that 8 feet on either side of the rail was the farthest he could see on account of the fences; that he could see that distance for three-quarters of a mile, and the range of vision would widen but little as the crossing was approached until he was right at the crossing; that the motion of the engine interferes somewhat with observation of small, or any, objects. The fireman did not testify positively that he was watching the particular crossing, because his duties sometimes made such observation impossible. The engineer testified that he was always observing when the fireman was not, and when the train was running.

Testimony was given concerning the atmospheric disturbance caused by a train in motion and the probable effects thereof upon a small child standing near the track; it being a contention of the defendant that the known facts and circumstances support an inference that the child was not struck by the train, but was thrown down and rolled upon the earth. Upon this subject the testi-

mony is that the draft caused by the train would have a tendency to throw down, if standing, and cause to roll on the ground, objects of small weight; and that mail bags thrown off a train had been seen to follow the train 200 feet.

It is obvious that the jury, if it followed the instructions of the court, found the enginemen to have been negligent in observing this crossing; and that a proper lookout would have, or should have, discovered the presence of the child on or near the track in time to protect her. It is equally obvious that it is by inference or by conjecture only that these conclusions can be arrived at. It is the peculiar province of juries to draw inferences of fact; but they must draw them from facts which are admitted or proven upon the trial, and they must be consistent with the admitted or proven facts from which they are drawn. And when inferences are permitted to outweigh the positive testimony of witnesses, not impeached generally, the proven or admitted facts and the necessary or reasonable inferences therefrom should be inconsistent with such testimony. No reason can be given in a case like this for finding that the testimony of the enginemen is untrue, unless it is that their testimony is opposed to and contradicted by other proven facts and circumstances and the necessary or reasonable inferences to be drawn therefrom. The proven fact that the child received the injuries described is not inconsistent with the testimony of the enginemen. That she was struck by the train is not a necessary inference from the fact that the injuries described were suffered by her; and if it is a reasonable inference that she was struck by the train, or by some part of it, it does not follow that she could have been or should have been discovered upon the highway by one maintaining a proper lookout from the engine. There are 5,280 feet in a mile, and, when moving at the rate of 40 miles an hour, a train moves 3,520 feet in a minute, and 4,400 feet in a minute, if moving at the rate of 50 miles an hour. The men on the engine, in the performance of

their duty, must examine, as well as vision and movement will permit, both approaches to a highway crossing. Right of way fences are required by law; and the difficulty of seeing a small object, hidden by such a fence as has been described, until the train has approached so nearly to the crossing that the line of vision is over, and not through, the fence, is apparent. To warrant the inference, in face of their testimony, that these enginemen were not observing the crossing, it must be assumed that the child was standing or sitting in a position not obscured by fences and practically upon the rail. The proven facts do not make necessary or reasonably support such an assumption. We conclude that there is no testimony to support the finding that the child was hurt as a direct and natural consequence of the failure of the engineer and fireman on the engine of the train to keep and maintain a reasonably careful lookout.

Plaintiff introduced testimony tending to prove that the statute signals were not given. It is said by appellee that this testimony and the claim of negligence founded thereon should have been submitted to the jury. The appellate court is not usually concerned about errors claimed to have been made against a nonappealing party. *Hughes* v. *Railway Co.,* 78 Mich. 399 (44 N. W. 396). The point is not discussed by appellant. It is of importance here as affecting the right of plaintiff to a new trial, for which reason we consider it. We are referred by appellee to *Battishill* v. *Humphreys,* 64 Mich. 494 (31 N. W. 894); *Marcott* v. *Railroad Co.,* 47 Mich. 1 (10 N. W. 53); *Keyser* v. *Railway Co.,* 56 Mich. 559 (23 N. W. 311, 56 Am. Rep. 405). If the signals were not given, there was a distinct violation of law, and therefore evidence of negligent conduct of defendant's servants. Whether such conduct was unimportant depends upon whether we can say that the failure to give signals could have had no effect upon the conduct of the child. In *Marcott* v. *Railroad Co.* it appeared that a child 2½ years old was killed by defendant's train, and testimony tended to prove

that the statutory signals were not given, which, it is said, " we cannot, as matter of law, say had no effect on the result." There was evidence of efforts of bystanders to rescue the child after the approach of the train was discovered; efforts which might have been sooner exerted. In *Keyser* v. *Railway Co.*, a child 2½ years of age was run over. The question of failure to give signals does not seem to have been a point of importance in this court, although the failure to fence the right of way was regarded as a fact of importance. In *Battishill* v. *Humphreys* the injured child was three years old. It was said that whether the signals were given was a question for the jury, and was properly submitted to them. We are impressed that we should not say, as a matter of law—that is, indulge a conclusive presumption of fact—that if proper signals had been given, they would not have affected this child as they are intended to affect all who hear them. Undoubtedly, the precocity, environment, and previous instruction of the child, if known, would afford some aid in determining what its conduct would be likely to be in such a case. The law requires the signals to be given for the safety and protection of all persons lawfully upon the highway; and we think it was for the jury to determine whether failure to give them, if there was such failure, was a material fact.

The judgment is reversed, and a new trial granted.

STEERE, C. J., and MOORE, McALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.