## AMERICAN OIL CO. v. FREDERICK.
### No. 6187.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1933.

As amended April 14, 1933.

E. H. Brownley, of Baltimore, Md. (H. Rank Bickel, Jr., and Karl F. Steinmann, both of Baltimore, Md., and David A. Christopher, of Cleveland, Ohio, on the brief), for appellant.

W. P. Barnum, of Youngstown, Ohio (J. V. Murphy and Barnum, Hammond, Stephens & Hoyt, all of Youngstown, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

This case is here for the second time. American Oil Co. v. Frederick, 47 F.(2d) 54.

The Adamson Manufacturing Company was a manufacturer of underground gasoline storage tanks at East Palestine, Ohio. During 1926 it sold a large number of these tanks to appellant. In that year it shipped a five hundred and fifty gallon tank to appellant at Rosslyn, Va., where it was installed at one of appellant's stations. This tank developed leaks whereupon appellant removed it from the ground and returned it for credit to the Adamson Company by way of the Pennsylvania Railroad. Upon its arrival at East Palestine this tank was delivered on October 29, 1926, to appellee's intestate, Frederick, an employee of the Adamson Company, who transported it by truck and placed it in the yard at the Adamson plant.

On November 5, 1926, an employee was attempting to remove a fill or vent pipe from a five hundred and fifty gallon gasoline tank located in the Adamson yard. While using an acetylene torch for the purpose of expanding the flange into which the pipe had been screwed, an explosion resulted which caused the death of Frederick.

The negligence with which appellant was charged was in returning the tank containing gasoline or gasoline fumes to Frederick's employer—(1) without labeling it as dangerous; (2) without first removing the gasoline by steaming; and (3) if the tank were returned without steaming, in failing to advise the Adamson Company of that fact.

In the former opinion we held that there was no substantial evidence that the tank returned was the tank which exploded and that appellant's motion for a directed verdict should therefore have been sustained. For this reason the judgment was reversed.

Upon the second trial appellee again had verdict and judgment and appellant again presents for review the identical point upon which a reversal was ordered. The judgment must again be reversed. We find nothing in the evidence adduced at the second trial which adds any substantial probative force to that introduced upon the first. The controlling evidence upon the first trial is succinctly set forth in the former opinion.

Upon the second trial appellee introduced George Welsh who testified that some days before Frederick was killed he assisted Frederick in transporting a five hundred and fifty gallon tank covered with mud and rust from the Pennsylvania freight station to the Adamson yard and that about a week after Frederick was killed he saw this tank by the side of the McClure building with its head against the building. He did not identify the tank as appellant's. He stated on cross-examination that he did not know the day on which he assisted in bringing the tank from the station, nor whether he had brought other tanks away, nor whether there were other five hundred and fifty gallon tanks at the Adamson plant.

James Straley testified for appellee that the tank that exploded was placed against the McClure building, that the explosion blew the end of the tank on top of the building, from which it was afterwards removed and

scrapped, and that the tank itself was taken into the shop and repaired.

In addition to his testimony upon the first trial Robert M. Rowan, witness for appellee, testified that the tank that exploded was shipped back to appellant with a number of other tanks some time between February and April, 1927; but he testified that it was shipped to apply upon an order which appellant had in the shop. He further testified that he knew it was appellant's tank because it had the words "no good" painted on it and because he saw a copy of the freight bill for it upon the shipping desk.

John Ohler, a witness for appellee upon the first trial, testified upon the second that the tank that exploded was dirty as if it had been buried; that it had a "dinge" or dent upon it.

We have undertaken thus to set forth the substance of the new testimony. We find nothing in it which, taken in connection with the testimony adduced upon the first trial, strengthens the "mere possible inference" that it was the tank of appellant which exploded. There is no direct evidence that it did. We may safely assume that any unearthed gasoline tank will present a somewhat dirty or rusty appearance.

The freight bill indicated nothing except that a tank had been received. Evidence that an exploded tank bearing the words "no good" had been repaired and shipped to appellant to fill an order furnished no substantial basis for a conclusion that the tank belonged to appellant when it exploded. Any inference in favor of appellee was of course a rebuttable one which we think yielded completely to the testimony of Adamson and Steinhouser, witnesses for appellant upon both trials, who testified at each trial that the tank of appellant was still intact after the explosion. If with some force it may be said that Adamson's testimony was somewhat discredited by his cross-examination there yet remained the testimony of Steinhouser that appellee's tank did not explode but remained intact in the yard for some time after the explosion.

We need not amplify the original opinion. We are content to cite, in addition thereto, the very pertinent case of Pennsylvania Railroad Co. v. Chamberlain, Adm'x, 53 S. Ct. 391, 77 L. Ed. ——, decided by the Supreme Court February 13, 1933.

Reversed and remanded for a new trial.