## GARDINER v. NEW YORK & PORTO RICO S. S. CO.

### No. 61.

Circuit Court of Appeals, Second Circuit.

Dec. 29, 1944.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

Burlingham, Veeder, Clark & Hupper, of New York City (Ray Rood Allen and G. Hunter Merritt, both of New York City, of counsel), for appellant.

Benjamin, Galton & Robbins, of New York City (Ralph Stout, of New York City, and Louis Rothbard, of Brooklyn, N. Y., of counsel), for appellee.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought under the Jones Act by the plaintiff, Josephine Gardiner, as administratrix of the estate of her deceased husband, Malcolm Gardiner, a radio operator on the S. S. San Juan, operated by the defendant, New York & Porto Rico Steamship Company, to recover damages for the death of Malcolm Gardiner as the result of the failure of the defendant to provide him with a safe place to work. From a judgment for $17,776.39 for the plaintiff after a trial to a jury, the defendant appeals. We think the judgment was right and should be affirmed.

The San Juan was an old vessel and there was abundant evidence which indicated that the insulation of her electric wiring system was worn and defective. As a result, the plaintiff's intestate is said to have met his death on January 23, 1939, from an electric shock while he was in the engine-room of the ship endeavoring to locate a ground which interfered with the reception and transmission of his radio apparatus. For this purpose he had gone down into the engine-room on the morning of that day to test the switchboard with a voltmeter. While standing on the steel floor of the engine-room, crouching on his haunches, so as to connect one terminal of the voltmeter with a switch and the other with the floor of the vessel for the purpose of detecting a ground, he was seen suddenly to fall or be thrown backwards in a practically lifeless condition from which he never recovered. While the switches were being tested by him for grounds they had registered 30, 40 and 70 volts respectively. These readings indicated grounds, and Professor Arendt, the plaintiff's expert, testified that if there had been a rubber mat on the steel floor of the engine-room such as is frequently used to protect men in the engine-room from grounds by means of insulation no current from the ground could have passed through his body. He testified that a voltage of 70 was sufficient to cause the death of Gardiner if a current produced by such an electromotive force passed through his body and, that in his opinion,

"the presence of the ground was a competent and producing cause of his death."

The voltage of the current which entered the circuit was concededly about 110 volts. The defendant's expert, Professor Robin Beach, testified that if, as was assumed, the current passing through the ground caused the voltmeter to register 70 volts, Gardiner could by no possibility have received a fatal shock through that ground circuit. This, he said, was because the voltmeter's resistance was much greater than that of the ground circuit exclusive of the voltmeter itself, while the resistance of Gardiner's body was but a minute fraction of the ground resistance. The drop in potential across the voltmeter would, he said, be far greater than the drop across the body of Gardiner, if the latter's body was substituted for the voltmeter in an otherwise identical circuit. Accordingly, Professor Beach concluded that no amperage sufficient to have caused death could have passed through Gardiner's body by way of this ground circuit. But, on the plaintiff's behalf, Professor Arendt testified that in his opinion the presence of a ground was the cause of death and we are in no position to choose between the theories of these two experts. The decedent at the time of his shock was apparently engaged in testing the main switch which he had not before tested and we do not know that the test would not have disclosed a full ground. He had not then tested eight or ten other switches controlling different circuits. We know that a full ground had been discovered in some of the electrical circuits of the ship in October, 1938, and that the apparatus had not been fully overhauled prior to the accident. There was evidence that the insulation and wiring of the San Juan was in general old and defective and that in the past there had been trouble from grounding. While we do not know the exact location or extent of the short circuits which are believed to have caused Gardiner's death, there is reason to suppose that there was such defective insulation in some part of the ship that the exposed wire touched metal of the vessel which was near enough to Gardiner to pass the current through a short circuit into his body under a voltage little impaired and certainly not stepped down by any such resistance as the 86,000 ohms assumed by Professor Beach. In such circumstances, however sound the physical theories of Professor Beach may have been in general, his calculations as to the voltage passing through the decedent's body would not hold. In the face of the testimony of Arendt and of plaintiff's two physicians that the death of Gardiner was due to an electric shock, we cannot say that the verdict did not rest upon a substantial basis.

The defendant argues that if Gardiner met his death from an electric shock he must have touched two opposite terminals of a switch because of a lurch of the vessel which threw him off his balance. He was experienced in dealing with electrical apparatus and would be as careful to avoid such a risk as a track walker on an electric roadbed would be to avoid touching the third rail. Under the circumstances, we think the jury was justified in finding that it was more probable that he received the shock by means of a short circuit through the structure of the ship, and thence through his body as he stood on the steel floor of the engine-room, than that he touched both terminals of the switch. Such a resolution of the facts of the case would leave no room for saying, as the court did in Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819, that there was no basis for the inference which the jury drew. Under the theory adopted the jury found the defendant liable because it had failed to furnish an insulating mat on which Gardiner could stand as he made the tests.

Beach admitted that if one situated as Gardiner was came in contact with a live element on the positive side of the switchboard and there was a dead, i. e., a full ground on the negative side, he might get the full voltage of 110 volts (fol. 1306). In our opinion the entire case involved only disputed questions of fact as to which the verdict of the jury should be treated as controlling.

Judgment affirmed.