R. B. BOWLBY, Plaintiff, v. Jesse J. DANIELS, Defendant.
No. A–11265

District Court, Alaska. Third Division, Anchorage.
Dec. 31, 1958.

James K. Tallman, of Bell, Sanders & Tallman, Anchorage, for plaintiff.

John C. Hughes, of Davis, Hughes & Thorsness, Anchorage, for defendant.

McCARREY, District Judge.

The plaintiff filed an action for malicious prosecution which arose when the defendant had the plaintiff arrested for horse theft. The case was tried by a jury, and at the close of the plaintiff's case, the defendant moved for a directed verdict under Rule 50, Fed.R.Civ.P., 28 U.S.C.A., which was denied without prejudice. Thereafter, at the conclusion of the case, the defendant renewed the same motion and the Court ordered a verdict directed in favor of the defendant.

The plaintiff then filed a motion to reconsider the directed verdict, which was denied, but since I am unable to find any case law in Alaska on the subjects of malicious prosecution or standards for directing a verdict, I feel that a written opinion is appropriate.

■ Before recounting the evidence adduced at trial, the standard for directing a verdict in Alaska should be determined. A research of this subject discloses that there are, at present, two standards for directing a verdict. There differences involve the jurisprudential problem of the proper function of a jury in civil cases.

    a. One favors substantial control by the trial judge over the decisions of the jury.

    b. The other holds to the theory that a trial judge should only act as a guide for the jury in its determinations.

The rule in the federal system used to be the one wherein the judge held substantial control of the jury. See Pennsylvania Railroad Co. v. Chamberlain, 1933, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819. The standard used in that case is best articulated by the authors, Field & Kaplan, as noted in their book, "Materials for a Basic Course in Civil Procedure," p. 576 (1953).

"It is possible to conclude that the trial judge may direct a verdict against the proponent upon all the evidence in the case—evidence both favorable and unfavorable to the proponent—if he determines although there is evidence of every fact which the proponent must establish, that he would be duty bound to set aside a verdict for the proponent should the jury return one for him because it would be against the weight of the evidence. This method of disposing of the question obviously involves passing upon the credibility of witnesses (sic) by the judge. It means that if the judge concludes that viewing the whole of the evidence no reasonable jury should find a verdict for the proponent that then the jury should not be permitted to consider the evidence."

This standard is embodied in the substantive law of Alaska.

"Sec. 55–9–12 A.C.L.A.1949. What constitutes cause not sufficient to be submitted to jury. A cause not sufficient to be submitted to the jury is one where it appears that if the jury were to find a verdict for the plaintiff upon any or all the issues to be tried the court ought, if required, to set it aside for want of evidence to support it."

See also Shoup v. Marks, 9 Cir., 1904, 128 F. 32; Begenish v. Gates, 1905, 2 Alaska 511.

The present standard I now find in the federal system is set out in Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. This standard is that of the second school of thought, *supra,* and again this is well considered by the same authors in "Materials for a Basic Course in Civil Procedure," *supra,* as follows:

"The prevailing view, the other possible test or standard, is that in passing on a motion for a directed verdict the trial judge considers only the evidence favorable to the proponent, completely disregards all unfavorable evidence and determines whether a reasonable jury from the evidence before them—viewed in its most favorable light for the proponent—could find every fact exists which must exist to sustain the proponent's case.   In each test the judge must determine what a reasonable jury can conclude.   The first test involves passing on credibility of witnesses; the second does not."

Which standard for directing a verdict is applicable to the courts of Alaska?   The answer is both.   The federal standard, which is independent of the Fed.R.Civ.P. and which is set out in the Wilkerson case, supra, is applicable in the Alaska courts in cases where federal jurisdiction is exclusive.   Where the District Court of Alaska sits as a territorial court in non-federal matters, the standard embodied in Sec. 55–9–12, supra, is applicable.

■  As the case in question was of a local nature involving no federal question, the applicable standard for directing a verdict is that found in Sec. 55–9–12, supra. Under this standard the trial judge may take into account, in deciding whether to direct a verdict, the credibility of the witnesses produced.

■■  There are four elements to the tort of malicious prosecution, which is a common law action in the Territory of Alaska, since there are no statutes on this subject.   They are as follows:

a.   A criminal proceeding instituted or continued by the defendant against the plaintiff.

b. Termination of the proceeding in favor of the accused.

c. Absence of probable cause for the proceeding.

d. "Malice," or a primary purpose in instituting the proceeding other than that of bringing an offender to justice. "Law of Torts," Prosser, p. 645 (1955).

The element this opinion is concerned with is (c), absence of probable cause. The evidence adduced at trial on the subject of probable cause was as follows:

The plaintiff, R. B. Bowlby, testified that he entered negotiations with the defendant, Daniels, to buy a used truck on or about the 1st of July 1955. Daniels, at that time, was owner and manager of the Consignment Lot which dealt in such vehicles. After considerable negotiating, the plaintiff agreed to buy a 1949 Dodge truck. The agreement to purchase was to the effect that Bowlby would transfer to Daniels a two year old buckskin horse with certain tack and pay $100, for which Daniels would transfer the truck to him. Bowlby testified he informed Daniels that he wanted the truck to make a trip to Havre, Montana, and that in reply to this statement Daniels said, "The truck was good enough to go to Mexico." Mrs. Bowlby then made out a bill of sale for the horse and tack and gave it, plus $100, to Daniels. Daniels in turn gave a negotiable certificate of title for the truck to Bowlby. Bowlby testified he was satisfied with the deal at this point and that he drove off in his truck. Bowlby then testified that a few days later he heard a rod knock in the truck. Hearing this knock, he put the truck up on blocks and had his wife remove the pan (his hand being in a cast from a previous accident). Mrs. Bowlby, he testified found #2 crankshaft bearing scored. Bowlby then testified that he cut paper

shims and put them in between the insert bearings and the connecting rod before his wife tightened up the rod again. With this done, he drove to Daniels' lot and complained. He testified that he asked Daniels to "rescind" the contract. Daniels refused and Bowlby thereupon left the truck in Daniels' yard with the negotiable certificate of title and told the defendant that he was going to get the horse. He found the horse at Daniels' place, and after talking to the young daughter of the Defendant, he and his wife took the horse and tack. Bowlby then testified that they stopped at a police station on their way home and reported the incident. Daniels came home shortly thereafter and found the horse and tack gone and immediately went to the United States Attorney and signed the complaint.

Bowlby called as his next witness a subsequent buyer of the truck (12 days after Bowlby left it in Daniels' yard). This witness, on cross-examination, testified that the truck ran well for the two years that he owned it and that he never had any work done on it. Absolutely no evidence was submitted that Daniels had the truck fixed between the time Bowlby abandoned it in his yard and the time Supple, the new buyer, bought it.

Thus, the question to be decided is: Could Daniels reasonably believe that Bowlby, using only Bowlby's and his witnesses' testimony, committed larceny.

Larceny is defined as follows:

"Sec. 65–5–41 ACLA 1949 Supp. Larceny of money, etc.: Description in indictment. That if any person shall steal any money, goods, or chattels, or any Government note, or bank note, promissory note, or bill of exchange, bond, or other thing in action, or any book of accounts, order, or certificate, concerning money or goods, due or to become due or to be delivered, or any

deed or writing containing a conveyance of land or any interest therein, or any bill of sale, or writing containing a conveyance of goods or chattels or any interest therein, or any other valuable contract in force, or any receipt, release, or defeasance, or any writ, process, or public record, the property of another, such person shall be deemed guilty of larceny, and upon conviction thereof, if the property stolen shall exceed in value one hundred dollars, shall be punished by imprisonment in the penitentiary not less than one nor more than ten years; but if the property stolen shall not exceed the value of one hundred dollars, such person, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one month nor more than one year, or by fine not less than twenty-five nor more than one hundred dollars; Provided, That in all prosecutions for the larceny of money wherein an exact description of the number and denomination of the coin or other money taken cannot be given, it shall be sufficient to allege that the same was lawful money of the United States, or of any other country or countries as the case may be, and the value thereof in money of the United States."

A statute like the above requires felonious intent on which to base a conviction. Would it be reasonable for Daniels to believe that Bowlby had a felonious intent when he took the horse from Daniels? 32 Am.Jur. 137, p. 1048, defines larceny as follows:

"The wrongful taking of another's property without his consent and with no apparent purpose of returning it is, in the absence of explanatory

circumstances, evidence of an intent to deprive the owner wholly of his property."

Some might argue that Bowlby took the horse under a mistake of fact, believing it to be his. However, from his own testimony he knew Daniels had title to the horse as he kept asking Daniels to "rescind" the contract. It is unusual that he would use the legal term "rescind" in connection with the contract, but it clearly points out the fact that Bowlby knew he was taking Daniels' property when he took the horse.

Prosser, *supra*, at page 652, has this to say:

"Malicious prosecution is an action which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty, and letting finished litigation remain undisturbed and unchallenged. It never has been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain. Chief among these is the requirement that the plaintiff must sustain the burden of proof that the criminal proceeding was initiated or continued by the defendant without 'probable cause.' This is true even though the defendant is found to have acted with 'malice,' for an improper purpose, since it is the part of a good citizen to bring about the prosecution of those who are reasonably suspected of crime, and the addition of a personal motive should not result in liability for performing a public obligation. The existence of such 'malice' does not create even an inference that probable cause was lacking.

"Probable cause has been defined as 'a reasonable ground of suspicion, supported by circum-

stances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense.' It resembles very closely the reasonable conduct under the circumstances which is the fundamental issue in negligence cases. It includes first of all a belief in the possible guilt of the accused, since the reasonable man will not prosecute another whom he believes to be innocent; and this belief must be one as to the fact of guilt, rather than as to the possibility of securing a conviction. While it need not approach absolute certainty as to the facts, and it is not inconsistent with a considerable element of doubt, it must be more than mere conjecture or unfounded suspicion. Beyond this, the belief must be supported by appearances known to the defendant at the time, and a prosecution instituted without probable cause cannot be justified by anything, short of guilt in fact, which comes to the knowledge of the defendant later. The appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without seeking verification.

"Since probable cause is a matter of the appearances presented to the defendant, a mistake of fact as to the conduct of the accused will of course not prevent its existence. Some courts have held that a mistake of law, as to whether such conduct amounts to a criminal offense, or to the particular offense charged, cannot protect the instigator of prosecution, apparently on the antique and questionable theory that he is required at his peril to know the law. For the most part such cases have involved mistakes of law so extreme that they appear unreasonable even for a layman to make. The better view which is supported by a few decisions, would seem to be that a reasonable mistake of law should stand upon the same footing as a mistake of fact, and will not preclude probable cause."

In the absence of any statutory or case law to the contrary, I am of the opinion that the above rule should be adopted as the rule on the subject of probable cause in malicious prosecution.

A glance at the criminal calendar of this court should be enough to convince anyone that there is too much "self help" in violation of the laws of the Territory to permit wide encouragement of actions for malicious prosecution. I am of the opinion that orderly and methodical practices and procedures should be followed in this enlightened day and age, and in respect to the archaic doctrine of "self help," the same should be abandoned, and parties should be encouraged to report possible crimes to the proper officials and to use the available and accepted legal due process of law to redress their wrongs.

If there was a breach of warranty in this contract, and this does not seem likely taking Bowlby's evidence in its

best light, Bowlby's remedy was a civil suit, not self help. A reasonable man in Daniels' position could only believe that his horse had been stolen, as in fact it had.

I am, therefore, of the opinion that where the plaintiff has failed to prove, by any evidence, absence of probable cause, an essential element of a malicious prosecution action, the court had no other recourse but to direct a verdict in favor of the defendant.