Harold G. **WEIL** and Bea Weil, His Wife, Appellants,

v.

Joe **KESHNER**, Appellee.

No. 16818.

United States Court of Appeals Eighth Circuit.

March 21, 1962.

Walter S. Berkman, St. Louis, Mo., for appellants.

George A. Spencer, Columbia, Mo., and Wilder Lucas, St. Louis, Mo., for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

Harold G. Weil and Bea Weil, his wife, plaintiffs-appellants, hereinafter referred to as plaintiffs, brought this suit against Joe Keshner, defendant-appellee, hereinafter referred to as defendant, to recover actual and punitive damages claiming they had been defrauded by the defendant in the sale to them of a one-half interest in a bull. It was alleged by the plaintiffs that the defendant represented that the bull was a breeder of fine cattle, in good health and that they relied thereon, but that actually the bull was a reactor to the agglutination test for brucellosis and incapable of producing healthy and satisfactory offspring. They sought $20,000 because of alleged damage by way of contamination to their herd, plus $10,000, representing their one-half interest in the bull that was necessarily destroyed, and $25,000 punitive damages.

In his answer defendant denied plaintiffs' charges and filed a counterclaim against plaintiffs, alleging that while the bull was in the plaintiffs' possession they allowed it to become infected so that it was a reactor to the agglutination test for brucellosis; that it thereafter could not be used for breeding purposes and it was necessary to destroy it, and that the plaintiffs, in allowing the bull to become so infected, had acted willfully, wrongfully and maliciously. Defendant asked for $15,000 actual damages and $15,000 punitive damages. The case was tried to a jury which found against the plaintiffs and for the defendant on the defendant's counterclaim, assessing his actual damages against plaintiffs in the sum of $6,000 less one-half the salvage or $147.31, plus punitive damages against plaintiffs in the sum of $4,000. This appeal by the plaintiffs is only on the verdict and judgment rendered in favor of defendant and against the plaintiffs on the counterclaim. Plaintiffs do not here urge an appeal from the adverse findings as to their original cause of action.

In appealing, plaintiffs charge error in (1) denial of their motion for a directed verdict as to defendant's counterclaim because of failure of proof; (2) in the court's charge to the jury; (3) in the admission of the testimony of Dr. Leonard A. Rosner over plaintiffs' objections.

To rule on the questions presented, it becomes necessary to summarize the evidence presented to the jury and upon which their verdict was based. In doing so we, of course, take that view of the evidence which is most favorable to sustaining the jury's verdict and accept as established all reasonable inferences arising from the testimony which tend to support the jury's conclusion.

Plaintiffs own and maintain a herd of Angus cattle near Dallas, Texas. Defendant is in the business of raising and breeding Angus cattle on his farm near New Florence, Missouri. In February, 1956, plaintiffs purchased from the defendant for $10,000 a one-half interest in a bull named "Prince Eric Good Earth 157". The arrangement between the parties was that each was to have the use of the bull for six months out of each year.

Bangs disease or brucellosis is an infectious disease in cattle, swine and goats. It causes animals to abort and it causes undulant fever in human beings. There is no known cure. Cattle can be vaccinated against it, usually at an early age. Bulls are usually not vaccinated but female calves are. On February 21, 1956, subsequent to the sale of a one-half interest in the bull to plaintiffs and preparatory to its being sent to plaintiffs in Texas, Dr. Tom Omohundro, a veterinarian, tested the bull for brucellosis. The test was negative and the bull found to be clean and healthy. The following month the bull was taken by the plaintiffs to their farm in Texas. It was returned to the defendant's place in October, 1956. In November, 1956, it was again sent to the plaintiffs in Texas and returned to the defendant in October, 1957. Shortly before the bull was returned to the defendant in October, 1957, a veterinarian in Texas tested him

and, finding him "clean", issued a good health certificate to that effect. Such testing and good health certificates are legal requirements for the moving of animals in interstate commerce.

In June, 1958, the bull was again tested for brucellosis at defendant's place of operation in Missouri. At that time there was a positive reaction to the test. All other previous tests had been negative. In light of the clean history of the defendant's herds, the veterinarian suspected that perhaps a vaccination had been given. In neither plaintiffs' nor defendant's herds of cattle had there ever been a case of brucellosis. Promptly upon the positive test of June, 1958, the veterinarian in charge of defendant's herds tested all animals and found no reactors excepting for one or two previously vaccinated cattle. On June 23rd, August 5th and August 13th of 1958 the defendant wrote Harold G. Weil, one of the plaintiffs, asking whether they had vaccinated the bull against brucellosis while it was in Texas. It was pointed out that if the positive reaction to the test was due to vaccination then the animal would not have to be destroyed. Plaintiff's answer to the defendant's inquiry was evasive, "I remember specifically standing next to the truck and asking Aiken to get the certificate from his pocket, which he did and he gave it to you at the time. Other than that I do not know what to say." As a result the bull was slaughtered in accordance with requirements of the State of Missouri. Salvage totalled $294.62.

At the trial plaintiff Harold Weil specifically denied vaccinating the bull, but an ex-farm manager of the plaintiffs, one Aiken Knox, testified to the contrary. He was working for the plaintiffs in October, 1957, when the bull was tested before reshipment back to Missouri. He testified that the day the plaintiff Harold G. Weil was informed by his veterinarian that the bull had tested negative for brucellosis he said to Knox that now he could get his money back. He said, " * * * I am going to get my money back on that bull if it is the last thing

I ever do" and "* * * this bull would never return to the farm". He instructed Knox to vaccinate the bull for brucellosis. Knox refused, saying that Keshner was nobody's fool and that it would cost Weil plenty. After ascertaining that the other men were out in the fields working, Weil, with Knox watching, personally tied up the bull and innoculated it with 5 cc. of anti-brucellosis Strain 19. Two days thereafter he instructed Knox to load the bull on a truck for delivery back to the defendant's place in Missouri. Knox met the plaintiffs in Kansas City and Mr. Weil went with him to deliver the bull to the defendant's farm, at such time giving to the defendant the health papers indicating the bull was clean. Neither told defendant of Weil's having vaccinated the bull. Knox, who was still working for plaintiffs, thought his job would be in jeopardy if he did so.

Two veterinarians testified in behalf of the defendant—Dr. Omohundro, who had examined and tested the defendant's herds many times and who was thoroughly familiar with them, and also Dr. Leonard A. Rosner, State Veterinarian. Dr. Omohundro testified without objection on the part of the plaintiffs that in his opinion the positive reaction to the brucellosis test given in June, 1958, was caused by a vaccination. He grounded his opinion on the past history of the defendant's herd and all of the surrounding circumstances. Dr. Rosner, basing his testimony on his experience, likewise gave it as his opinion that the positive reaction was caused by vaccination, not disease. His testimony was received over strenuous objections on the part of plaintiffs, who argued that inasmuch as Dr. Rosner had never been on the defendant's farm and was not familiar with defendant's herd there was no foundation for his testimony. Defendant then established further foundation by means of the records kept by Dr. Rosner as State Veterinarian concerning the history of state herds relative to brucellosis, this herd in particular and the fact that it was a brucellosis-free herd. Dr. Rosner's opinion was allowed to stand.

The foregoing summary of the testimony is in itself a refutation of plaintiffs' first assignment of error to the effect that the court should have granted a directed verdict on the defendant's counterclaim because of a failure of proof thereof. There is here substantial testimony which, if believed—and obviously it was believed—would support a finding that plaintiffs, being dissatisfied with their bargain, deliberately set out to get their money back and that plaintiff Harold Weil, upon Knox's refusal to vaccinate the bull, did it himself, knowing it would result in a positive test and thus possibly lay the basis for a suit against the defendant on the claim that the bull was not as represented when plaintiffs purchased a half interest therein.

Nevertheless, plaintiffs argue that the bull's positive reaction to the agglutination test may be as reasonably attributed to a cause excusing the plaintiffs from liability as to a cause subjecting them thereto; and that the cause excusing them should therefore be presumed, citing Jellison v. Kroger Co., 6 Cir., 1961, 290 F.2d 183, 184. They argue that the expert witnesses who testified for defendant admitted, in effect, that there was no way to tell if the positive reaction was from the disease or from a vaccination, relying on Pennsylvania R. Co. v. Chamberlain, 1933, 288 U.S. 333, 339, 53 S.Ct. 391, 393, 77 L.Ed. 819, wherein the Supreme Court said:

"We, therefore, have a case belonging to that class of cases where proven facts give equal support to each of two inconsistent inferences; in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover." (Citations omitted.)

Plaintiffs' argument loses any cogency through complete omission of reference to the eyewitness Knox who was present and saw plaintiff Weil vaccinate the bull

**504**

a few days after he had been tested and found to be clean. The jury was entitled to believe, and undoubtedly did believe, the witness Knox. Further, defendant's experts, in expressing their opinions, did not rely upon the test alone. Plaintiffs overlook the fact that both herds were brucellosis free, that all other tests had been negative, and that according to the two experts the indications pointed towards vaccination, not disease. We hold that there was substantial testimony in the record upon which the jury could reasonably reach a verdict in favor of the defendant on his counterclaim against the plaintiffs.

Plaintiffs' next point is that the trial court erred in its charge to the jury. In substance, the charge complained of was to the effect that if the jury found that plaintiffs injected the bull with vaccine causing the bull to react positively to the agglutination test for brucellosis, as alleged and as testified to by witness Knox, then the jury should find for the defendant. It is plaintiffs' contention that there was no competent evidence upon which to submit the charge in question. Having found to the contrary on the first point, we of course find no error in such instruction, which we have considered as a whole and which we find fairly and fully instructed the jury as to the issues on defendant's counterclaim.

■ Plaintiffs nevertheless contend that the court erred in using the following words:

" * * * if you further find and believe from the evidence that upon such a test being made, it is not possible to determine, with any assurance, *whether the animal actually had the disease known as brucellosis, or whether he was merely mildly infected as a result of the vaccination,* * * * " (emphasis supplied)

arguing that the words "mildly infected" are erroneous because there is no evidence in the record to show that there is a way to differentiate between "the reaction caused by natural infection and that from vaccine".

Plaintiffs' point is not well taken. The phrase is to be read in its context. It is obvious that the question was whether the bull had brucellosis or whether it was reacting to a vaccination. Although the results may be identical in response to the agglutination test, there is indeed a practical difference. Furthermore, it is common knowledge that a vaccine does have the effect of "mildly infecting". We find no error in the court's choice of words.

■ Plaintiffs' final argument is that the trial court erred in admitting the testimony of Dr. Rosner on the question of whether or not in his opinion the bull had been vaccinated. A reading of the record, we believe, fully justifies the receipt of Dr. Rosner's professional opinion, based as it was upon the fact that he knew by state records the history of the defendant's herd in question over many years, and the information given him by the veterinarian-in-charge that it was a brucellosis-free herd in which there had never been an infection, and that all previous tests had been negative. Be that as it may, however, the opinion testimony given by Dr. Rosner was identical with that given by Dr. Omohundro, to which no objection whatsoever was made. Even if there were error in admitting the testimony of Dr. Rosner—and we think there was not—it was nevertheless non-prejudicial and harmless, being merely cumulative of that which had been received without objection through Dr. Omohundro. Gerhart v. Henry Disston & Sons, Inc., 3 Cir., 1961, 290 F.2d 778, 786; Standard Accident Ins. Co. v. Rossi, 8 Cir., 1929, 35 F.2d 667, 670; Dorsey v. Muilenburg, Mo., 1961, 345 S.W.2d 134, 139.

Affirmed.