## WHATLEY v. BOOLAS.

(Division A.  Nov. 22, 1937.  Suggestion of Error Overruled Jan. 3, 1938.)

[177 So. 1.  No. 32897.]

Dent, Robinson & Ward and W. W. Ramsay, all of Vicksburg, for appellant.

Thames & Thames, of Vicksburg, for appellee.

McGehee, J., delivered the opinion of the court.

This is an appeal from a judgment rendered in favor of the appellee, Miss Helen Boolas, in the circuit court of Warren county, on account of damages sustained because of personal injuries received by her, due to the alleged negligence of her father, Ed Boolas, while he was driving a delivery truck belonging to the appellant in which the appellee was riding as the guest of her father, but without authority from the appellant, on Christmas Eve night between 11 and 12 o'clock, on the streets of the city of Vicksburg.

The testimony shows that the delivery truck was used in the business of the appellant, who was doing business under the name of the Hill City Cleaners, and that Ed Boolas was employed as driver thereof, with the privilege and authority to store it at night in his own garage at his home.

Ed Boolas, as a witness for the appellee, testified, in substance, that he was en route home from the place of business of his employer, after checking up the day's work at the office and paying over the moneys collected on his route, and that while traveling along South street in an easterly direction in the residential section of the city he was struck by a Plymouth sedan (alleged in the declaration to belong to Mrs. J. J. Ring, and driven by her son, J. J. Ring, Jr., whom the declaration alleges to be a dangerous, reckless, or incompetent driver, driving at a high, dangerous, reckless and unlawful rate of

speed), going in a northerly direction on Cherry street; that, upon approaching Cherry street at the intersection thereof with South street, he "looked to his left and did not see anything, and then glanced sideways," and that he neither saw any other car, nor the lights of an approaching car on his right; that there was nobody there; that thereupon he placed his delivery truck in second gear and proceeded to cross Cherry street, traveling at about 20, 25, or 30 miles per hour, and had almost cleared the intersection of the two streets when the other car, meaning the Plymouth sedan, struck the right rear wheel and side of the back end of his delivery truck, knocking it entirely across South street and causing it to become turned completely around so as to face in a westerly direction instead of the direction in which it was traveling, it being shown by photographs of the delivery truck introduced in evidence without objection that the same had been hit in such manner, that the other car went up onto the sidewalk to the north of the place of the collision after striking the delivery truck as aforesaid; and that the appellee received the injuries complained of on the occasion in question.

At the trial a nonsuit was granted on motion of attorneys for the appellee as against the codefendant, Mrs. J. J. Ring, and there was no evidence offered as to the whereabouts, the rate of speed, or the reckless manner in which her Plymouth sedan may have been driven at the time the delivery truck approached, entered, and crossed the street intersection, so as to enable the jury to determine whose negligence was a proximate cause of the injuries complained of, or as to which car had the right of way under the circumstances. In other words, the driver of the Plymouth sedan became the "forgotten man" in the lawsuit after nonsuit taken as to its owner, and the testimony of Ed Boolas, hereinabove mentioned, as to the manner in which he was driving, what he saw or failed to see when he looked upon entering the street

intersection, how and at what point of the intersection the Plymouth sedan hit his truck, and the distance the truck was thrown by the force and impact of this other car against it, was all left wholly uncontradicted by any witness in the case. Thus it would have been purely a matter of conjecture and speculation for the jury to have assumed that the Plymouth sedan arrived at or near the intersection first, or that the two cars came to the intersection at approximately the same time, so as to give the sedan the right of way under the city ordinance introduced in evidence, which provides that a car coming from the right at an intersection has the right to proceed first across the intersection.

Moreover, it was held in the case of Myers v. Tims, 161 Miss. 872, 138 So. 578, 579, that: "It is beyond the power of any municipal council to grant in their so-called right of way ordinances any such privileges as are today being asserted by the average of the drivers along right-of-way streets. The only right that these ordinances give, or validly can give, is this: When a vehicle traveling on a right of way street arrives at the intersection of a cross street at approximately the same time that a vehicle on the cross street arrives at the point of intersection, then the vehicle on the right of way street has the privilege to proceed, and this is the extent of the rule."

So, again, in the case of Gough v. Harrington, 163 Miss. 393, 141 So. 280, 282, the foregoing rule was reaffirmed when the court said that: "Ordinances granting a right of way on designated streets do not confer on those on the favored streets the right to proceed at full or unslackened speed so long as they have come within sight of the crossing before another enters the intersection, but a motorist on a right of way street who is approaching the intersection of a cross street must bring his vehicle under control, having due regard for the rights and safety of those having the first right to enter the intersec-

tion. The applicable rule for determining the respective rights conferred by such ordinances is stated in Myers v. Tims, supra,'' as set forth above.

All the facts and circumstances in evidence, and particularly the testimony of the appellee and her father, clearly show that the delivery truck in which she was riding had approached and entered the intersection of South and Cherry streets on the occasion complained of before the Plymouth sedan arrived, which is to say that the delivery truck had the right to proceed and was not negligent in so doing. The only facts relied on to show negligence on the part of the driver of the delivery truck were that he was driving in excess of twelve miles per hour in violation of a city ordinance, and was looking at the appellee in the direction of the other car, and having an argument with her at the time in question, but neither of such facts was shown to constitute a proximate cause of the injuries complained of.

The fact that the delivery truck had almost cleared the intersection when struck by the Plymouth sedan rendered it incumbent upon the appellee to show at approximately what distance away the sedan was at the time the delivery truck approached, entered, and tried to cross the intersection. The proof only showed that the speed of the delivery truck was so timed as to constitute a causa sine qua non, and this was not sufficient.

The rule announced in all of the decisions where accidents have occurred at a time when trains were being operated at a rate of speed in excess of the statutory limit, and which required that the rate of speed must have been the proximate cause of the injuries complained of, applies in the decision of the question of liability in the case at bar.

It is the contention of appellant (1) that he was entitled to the peremptory instruction asked for; and (2) that, if not entitled to the peremptory instruction, he is entitled to have the case reversed because of certain

errors committed during the progress of the trial, a-
mong which was the refusal of the court below to sus-
tain a motion, seasonably made, for a mistrial to be en-
tered, for the reason that the fact was developed in the
presence and hearing of the jury that W. M. Wilson, Jr.,
who took statements from the appellee's witnesses short-
ly after the accident, was the representative of an in-
surance company. This information was furnished the
jury by the father of the appellee while he was being ex-
amined by her counsel, and was not brought out on a
cross-examination of Mr. Wilson as a witness in the case
to show his interest or bias, as authorized under the rule
announced in the case of Mississippi Ice & Utilities Com-
pany v. Pearce, 161 Miss. 252, 134 So. 164; 56 A. L. R.
1439, and other cases where the fairness and correctness
of statements given to a representative of an insurance
company, or the truthfulness of the testimony of such
representative, is in issue. Mr. Wilson did not testify
at all as a witness in the case, and the statements taken
by him were admitted to have been as written, and that
there was no occasion for the witness, Ed Boolas, the
father of the appellee, to inform the jury that Wilson
was a representative of an insurance company. How-
ever, it is not necessary to a decision of this case that
we pass on the question as to whether the error com-
mitted in placing before the jury this highly prejudicial
testimony was later cured by the action of the trial court
in offering to direct the jury to disregard it, since the
decision must necessarily rest on the question as to
whether or not the motion of the appellant for a peremp-
tory instruction should have been sustained.

Under the facts set forth in this opinion, and on ac-
count of the failure of the appellee to make certain proof
to show the relative rights of the drivers of the two au-
tomobiles involved in the collision, and which proof was
available, so far as the record shows, by introducing

some of the occupants of the Plymouth sedan, we are of the opinion that the appellant was entitled to the peremptory instruction asked for.

Reversed, and judgment here for appellant.