COCA COLA BOTTLING WORKS OF GREENWOOD *et al. v.* HAND.

(Division B. Oct. 30, 1939. Suggestion of Error Overruled Nov. 27, 1939.)

[191 So. 674. No. 33844.]

894

Osborn & Lott and Harry Diamond, of Greenwood, for appellants.

898

**W. H. Montjoy** and **Alfred Stoner,** both of Greenwood, for appellee.

Argued orally by **W. H. Lott,** for appellant, and **Alfred Stoner,** for appellee.

**McGehee, J.,** delivered the opinion of the court.

A judgment was rendered on the verdict of a jury in the Circuit Court of Leflore county for the sum of $20,-000, in favor of the appellee, W. D. Hand, as damages on account of personal injuries sustained by him when he applied the brakes to his automobile, and turned it over in an attempt to avoid an anticipated collision with a truck belong to the appellant Coca Cola Bottling Works of Greenwood, which truck was being driven by the appellant Herman Catiom, a servant and employee of the said Bottling Works.

The declaration charged, in substance, that while the plaintiff, who resided at Greenwood, Mississippi, was driving his automobile, during the early afternoon of April 2, 1938, in a northwesterly direction on the paved concrete highway 49-E, about 3 miles from the corporate

limits of said city, the truck in question approached from the Shell Mound gravel road, traveling in a southerly direction toward the juncture, or point of convergence thereof with the said paved highway; that at a time when the automobile was about 35 yards southeastward on the said paved highway, the truck came up a steep incline at a reckless rate of speed, and drove up on said paved highway 49-E, so as to occupy the half of the highway which was nearest the said Shell Mound gravel road, thereby causing the plaintiff to swerve his automobile to the left, so that the two wheels on the left side were forced off the concrete pavement on to the gravel shoulder thereof; that while he was attempting, with due care and diligence, to avoid a collision with the truck, he was thrown with great force on the pavement, and the automobile was overturned; and that the injury and damage complained of were the proximate result of the negligence of the truck driver in thus approaching and driving on to the paved highway, as aforesaid.

If it is true, as the declaration alleged, that the truck came up on, and half way across, the concrete highway 49-E from the Shell Mound graveled road at a time when the automobile was approaching the intersection at a distance of about 35 yards, then it is also true that the truck should have been given sufficient time to proceed across the intersection, or at least for such distance as would have cleared the righthand portion thereof, before the automobile entered the same. See Myers v. Tims, 161 Miss. 872, 138 So. 578; Gough v. Harrington et ux., 163 Miss. 393, 141 So. 280; Whatley v. Boolas, 180 Miss. 372, 177 So. 1.

On the other hand, if the plaintiff is not held to the proof of the case thus specifically set forth in the declaration, and we are to look to all of the facts which are disclosed by the testimony as undisputed, in determining whether the peremptory instruction requested by the defendants in the court below should have been given, we find that the intersection entered by the truck could have

been seen by one traveling in a northwesterly direction on paved highway 49-E for a distance of approximately 500 feet; that the plaintiff, Mr. Hand, was driving the car, and on the front seat with him was a negro named Flournoy, employed by him, who, testifying as a witness for the plaintiff, said that he saw the truck approaching the intersection when it was at a distance of 35 or 40 feet away, on the Shell Mound gravel road, at a time when the car driven by the plaintiff was leaving the point where paved highway 49-E diverges from paved highway 82, and which point was shown by actual measurement, and without dispute, to be 500 feet from the intersection at which the accident occurred; that thereupon the plaintiff blew his horn, but kept on driving at the same rate of speed until he came near the intersection which the truck was approaching; that he then applied his brakes, and the car began skidding, the point at which it finally turned over and stopped being at least 200 feet, according to the witnesses for the plaintiff, from the point at which it began skidding, as shown by burnt rubber skid marks of the left tires on the concrete; but which distance, according to actual measurements made by witnesses for the defendants, was 279 feet from the beginning of the skid marks as they appeared on the concrete and it was 254½ feet to where the car turned over and stopped from the point where the witnesses for the plaintiff stated that they first heard the screeching of the brakes of the car, upon their attention being first attracted by the noise, and as they looked toward the scene; that the plaintiff was driving a three-weeks-old Chevrolet sedan, equipped with new tires, and that the two tires on the left side blew out, either while the car was on the gravel, after having skidded off the concrete, or just as it came back on to the concrete, before turning over.

The proof further shows that the car turned over 96 feet beyond the intersection, after crossing it in front of the truck; that according to the testimony of the plain-

tiff himself, the front wheels of the truck were coming on to the concrete pavement of highway 49-E, which was 20 feet wide, when he passed in front of the truck, whereas some of his witnesses testified that when they first heard the noise of the screeching brakes of the car at a point shown without dispute to have been not less than 119 feet from the intersection, they looked and saw the truck out on the concrete pavement, as far as the black line in the center thereof.

The proof further discloses that as the truck approached the intersection from the Shell Mound gravel road it had to cross a culvert which was located 106 feet from paved highway 49-E; that it was necessary for the truck either to slow down or stop and change gear in passing over this culvert;. that when it reached a point 75 feet from the intersection of the gravel road with the said paved highway there was a gradual incline of 5 feet to be ascended before reaching the pavement; and that those conditions, together with the fact that the truck came to a complete stop when it reached the center of the concrete pavement, according to the witnesses for the plaintiff, or at a point within 4 to 6 feet of the concrete pavement, according to the witnesses for defendants, thoroughly disprove any contention that the truck was driving at a greater rate of speed than was reasonable and proper, when it approached the intersection in question, or that the driver thereof in any manner violated the provisions of the statute, section 5571, Code 1930, here invoked by the appellee.

It was also shown that the truck was to stop at Shaffer's store and filling station just across the paved highway; and that since this store was located within the triangle between paved highways 82 and 49-E, and enjoyed trade from four or five plantations, the locality was what might be termed a public place, where many persons congregated, especially on a Saturday afternoon.

There was no stop sign where the Shell Mound gravel road intersected this paved highway 49-E, and there was

no statute in force at that time declaring the paved highway to be a right of way thoroughfare in relation to the said gravel road. The Shell Mound gravel road was formerly the main highway between Greenwood and Clarksdale, and was still a much-used thoroughfare at the time of the accident, and the plaintiff was shown to have been familiar with the conditions at the scene of accident.

Moreover, even though the plaintiff had been traveling upon a right of way thoroughfare, he would not have been entitled to cross the intersection ahead of the truck, under the facts of the present case, unless he had approached it at approximately the same time, as announced in the cases hereinbefore cited. In the case of Myers v. Tims, supra, it was held that when a motorist is traveling on a street which has been declared by city ordinance to have the right of way, and he arrives at the point of its intersection with the less favored street, then the vehicle on the right of way street has the privilege to proceed, provided it arrives at such intersection at approximately the same time that a vehicle on the cross street arrives; and that this is the extent of the rule. That "the supposed right of those on the favored street to proceed at full speed so long as they have come within sight of the crossing, . . . is no valid right, and the assertion and exercise thereof is simply a violation of law, . . ." [161 Miss. 872, 138 So. 579.] The principle there announced was reaffirmed in the two later cases hereinbefore mentioned, and it applies with even greater force in the case at bar, since it was not shown that highway 49-E occupied the legal status at that time of having the right of way by virtue of any statute or other authority.

These paved highways were built for all of the people, and if a motorist while traveling on one of our paved highways should be relieved of all duty to motorists entering the intersection of our graveled home-to-market roads with the same, merely because the motorist on the

pavement may come within sight of the intersection be-
fore the motorist on the graveled road does, there would
be places almost innumerable throughout the state where
travel would be practically blocked or eliminated from
the graveled roads into the paved highways much of
the time, for the reason that it would frequently occur
that one automobile after another would continually
come in sight on the paved highway approaching such
intersections.

On the rate of speed, one of the witnesses for the plain-
tiff testified that he was driving about 65 or 70 miles an
hour. The plaintiff himself testified that he did not
know how fast he was driving, but that he ordinarily
drove about 45 or 50 miles an hour, and that he was not
driving at a greater rate of speed than was his custom.
It was shown, however, by actual measurements made
by the state highway patrol of the skid marks which were
made by only two tires on the concrete, that when the
brakes were applied the car skidded 63 feet to the left
before going on to the graveled shoulder of the concrete
highway; and as heretofore stated, the car traveled a
distance of not less than 200 feet, by the estimation of
plaintiff's witnesses, and not more than 279 feet by mea-
surements taken by the defendant's witnesses, before it
turned over and stopped; and it did not stop at all until
two of the tires blew out and caused the car to turn over
on the pavement. In this connection, there was intro-
duced in evidence by the defendants, without objection,
the "Automobile Users' Guide," published by an Auto-
mobile manufacturer, showing the distances within which
a car stops when it is being operated on a concrete high-
way during dry weather (such as prevailed on the day
of this accident), and when the brakes are in good con-
dition. The witness furnishing this proof was an au-
tomobile salesman of about twenty years' experience,
who testified that the data furnished in the "Automobile
Users' Guide" was generally accepted by automobile
dealers as authentic, the information being gained and
verified through actual tests. It is declared therein that

when a car is traveling 50 miles an hour on a concrete
pavement, it will run about 56 feet after the motorist de-
cides to release the accelerator and apply the brakes, be-
fore the application of the brakes actually becomes ef-
fective; and that the car will then run only 109 feet
further before it stops; that at 60 miles per hour it will
run only 156 feet further after the brakes are actually
applied. This has reference, of course, to a normal ap-
plication of the brakes for the purpose of stopping a car
without turning it over. Therefore, it should be stopped
within a shorter distance at these rates of speed, where
the brakes are applied in such manner that the noise of
their screeching was heard on the inside of Shaffer's
store, approximately 200 feet from the point on the high-
way where they were first applied, and where the car
ran with two wheels on the gravel shoulder and two on
the concrete of the highway for a portion of the distance
covered in the instant case.

Whether this data, gathered by the manufacturer, be
fairly accurate or not, it should at least have sufficient
probative value, under all of the facts and circumstances
of this case, to show that when a car has traveled from
200 to 279 feet, partly on concrete and partly on gravel,
after the brakes were applied, in such fashion as to
burn and blow out two of the tires, and the car did not
then stop until it overturned, the conclusion necessarily
follows that it was being driven at such a rapid rate of
speed that the application of the brakes, in the manner in
which they were applied, would have caused the wreck,
even though the truck had come to a complete stop at
the point where the plaintiff says that he first saw it, 40
or 50 feet from the intersection, and where he then ap-
plied his brakes. In other words, the truck was where
it had a right to be at the time the brakes of the car were
applied, and nothing that the truck did or failed to do
thereafter had anything to do with the accident, the
plaintiff having testified that he passed in front of the
truck when its front wheels were coming on to the pave-
ment.

The case was submitted to the jury under erroneous instructions to the effect that the defendants would be liable if it appeared to the plaintiff that the truck would reach the intersection before he did; and they ignored the right of the jury to believe that he may have seen the truck approximately 500 feet away, before he reached the intersection, and from where his witness, who was seated in the car with him, said that he first saw it. The instructions were based on the assumption, however, that the jury might believe that the truck was running at a reckless rate of speed; but there was no substantial evidence to support that assumption, and it was clearly refuted by the physical facts disclosed by the evidence. We deem it unnecessary, however, in view of the conclusion we have reached, to discuss these instructions, or any other errors assigned, except the request for the peremptory instruction on behalf of the defendants. There is no conflict whatever in the evidence to the effect that the truck was at all times nearer the intersection than was the automobile, from the time that the automobile first came in sight of the truck, 500 feet away.

In view of the importance of the case to the respective litigants, and the voluminous record before us, we have set forth the facts in greater detail than perhaps would be necessary, as a basis for the decision. And in order to avoid prolonging the opinion further, we will refrain from discussing the numerous cases cited in the briefs, except to say that in our opinion they are not controlling here; and for the further reason that after a careful consideration of all the undisputed evidence, and resolving any conflict in the remaining evidence in favor of the appellee, the conclusion is inescapable that the failure of the appellee to have his car under proper control as he approached the intersection was, in our opinion, the sole proximate cause of this unfortunate accident; and the court below erred in not granting the peremptory instruction requested on behalf of the appellants.

Reversed and judgment here for the appellants.