Avent *et al. v.* Tucker *et al.*

(Division B. March 18, 1940. Suggestion of Error Overruled April 15, 1940.)

[194 So. 596. No. 33948.]

Alfred Stoner, Braxton B. Provine, Jr., W. H. Montjoy and H. Talbot Odom, all of Greenwood, for appellants.

Julian C. Wilson, of Memphis, Tenn., for appellants.

Barnett, Jones & Barnett, of Jackson, for appellees.

Witty & Brewer and **Means Johnston**, all of Greenwood, and **Ross R. Barnett**, of Jackson, for appellees.

Argued orally by **Alfred Stoner** and **Julian C. Wilson,** for appellants, and by **Ross R. Barnett,** for appellees.

**McGowen, J.,** delivered the opinion of the court.

In an action at law for damages, Mrs. E. O. Tucker and her two minor children, John and Ernest Tucker, as heirs at law, recovered a judgment against the appellants, Fisher Avent and Mrs. Fisher Avent, in the sum of $25,000, for which judgment was entered on the verdict of a jury by the lower court, and the Avents appeal to this court.

In substance the declaration charged that the appellee intestate came to his death while driving on Highway 49E north from Greenwood toward Clarksdale; that his death was the result of a collision between the Ford Coach automobile, driven by Tucker, and the Chrysler Sedan, driven by Mrs. Fisher Avent east on a graveled highway.

The declaration charged that at the time of the collision, Mrs. Fisher Avent was driving the Chrysler automobile as the chauffeur and agent of her husband, Fisher Avent; that the latter was seated on the rear seat of the Chrysler Sedan; that Tucker was driving on his proper side of the road going in a northerly direction, and was exercising due care; that Mrs. Fisher Avent, while driving the Chrysler Sedan for herself and as agent and chauffeur for her husband, was negligent and reckless in the operation of her automobile; that she was driving at an exceedingly fast, unlawful, and dangerous rate of speed, was not having the proper lookout for automo-

biles going in a northerly direction on the paved high-way, and did not stop or reduce the speed of the Chrysler automobile prior to approaching the crossing of said highway; that she did not blow her horn; that she did not have the car under reasonable, easy, and proper control, and did not have due regard to the traffic and use of the highway so as to endanger the life and limb of others using the highway. As a result of the collision and the negligence of the Avents in negligently driving into the automobile driven by Tucker, he was killed.

The main point argued in this court by the appellants for a reversal of this case is that the court below erred in not granting to them and to each of them a peremptory instruction. We will detail such facts as we think material to a proper appreciation of its solution.

At about nine o'clock in the morning on a clear day, Saturday, August 13, 1938, this collision occurred. Avent and his wife were driving from their home east on a graveled highway which ran east from Ruleville, Mississippi, to Minter City. The paved Highway 49E was about one mile west of Minter City. The Avents' home was further west. The paved highway was twenty feet wide. The Avents, husband and wife, were offered as witnesses by the appellees and they testified that on this morning before this accident at their home Mrs. Avent had driven her automobile from the garage preparatory to going to Greenwood on business. Fisher Avent told her that he wanted to go to Minter City in her automobile to get his paper. It had been the custom of Mrs. Avent to get their mail at Minter City daily. With practically nothing else said, Fisher Avent sat at the wheel of and drove the Chrysler automobile, Mrs. Avent, owner of the car, riding with him, seated on the front seat by his side. They were familiar with the graveled highway and with the intersection. They noted and knew of the slow sign erected by the State Highway Department about 335 feet from the intersection of the graveled and the paved highway. At a point on or near the line of the

paved and the graveled highway, there was a sign with the word "Stop" erected by the Highway Department. According to the testimony of the husband and wife, when they reached this highway stop sign, they looked to the south, the direction from which Tucker was coming, and they looked to the north. Some distance to the north they observed two ladies in an automobile coming south toward the intersection. Then Avent started his car, changed his gear, and without again looking south he drove on into the highway, and, at a point west of the center line of the paved highway, the collision occurred between the automobile driven by Tucker and the Chrysler Sedan. Tucker was alone. Mrs. Avent, after the automobile was brought to a complete halt at the stop sign 49 feet west of the intersection between the paved and the graveled highways, also looked south and north. She and her husband agreed that because of weeds and the obstruction of the schoolhouse fence at that point, they could not see in a southerly direction further than from 300 to 400 feet. Mrs. Avent did not again look south until their automobile had entered upon the intersection, and, she thought, the rear wheels were upon the pavement, then she looked south and saw the automobile driven by Tucker coming at a rapid rate of speed on Tucker's wrong side of the paved road; she called to her husband "Car" and closed her eyes. Avent's testimony was to the effect that when his wife called out "Car" and he looked, Tucker's automobile was from four to six feet from him, and that it struck his Sedan on the side, causing it to slue. He and his wife were both rendered unconscious. When consciousness returned to him, he was rather between the front and back seats with his feet up on the back of the front seat. His knee was injured, but not seriously. Mrs. Avent was rendered unconscious. She had a wound horizontally across her upper breast, and suffered some pain. The line of the schoolhouse, about which he testified, was about 110 feet south of the intersection or crossing. There was evi-

dence that there were tire marks, caused by the brakes of the Tucker automobile being put on, about 10 feet south of the intersection and proceeding eight or ten inches east of the center line of the paved highway. The witnesses differed about the exact point at which the collision occurred, but it is certain that it was east of the center line of the paved highway. Other witnesses said that there were marks made by the Avent automobile which traced directly to the point at which it came to rest. From the east side of the center of the paved highway, the Tucker Ford automobile ran a distance of 141 feet in a northeasterly direction. The graveled part of the highway was wide, having approaches for travelers to turn either north or south on the paved highway. The Tucker automobile also proceeded in a northeasterly direction from the point estimated to be the point of collision.

The photograph of the Tucker automobile here before us shows that the injury to it was the left of the bumper on the front, the side of the cowl of the radiator, and a very marked dent in the front door of the automobile, a place abut nine inches in diameter. The evidence that the blow on the door was heavy and violent seems to be undisputed. The frame of the automobile was displaced. The Ford automobile had been inspected a few days before the collision and was in good condition. It was by the garage owner afterwards junked.

It was shown by an engineer of the Highway Department that 49E was a "through" road, and the highway map was offered in evidence which shows that No. 49E is a federal highway beginning at Gulfport as No. 49, thence north to Jackson, and thence to Yazoo City. At Yazoo City there were created by the Highway Department Nos. 49, East and West; 49W runs in a westerly direction from Yazoo City, thence in a northerly direction to Tutwiler; 49E proceeds north to Tchula, thence to Greenwood, thence joining with 49W to Clarksdale where it connects with No. 61 northerly to Memphis and southerly to Vicksburg and points in Louisiana.

As to whether or not there was obstruction of the view at the stop sign 49 feet from the right of way of the paved road, the evidence is in sharp conflict, but it is undisputed in this record that within a few feet of this signboard between it and the paved highway, a clear view could be had south for a half a mile or more and that there is clear vision from the point of intersection of the paved with the graveled highway for even a greater distance. Neither of the Avents, after looking in both directions at the stop sign, looked south again at any point in the negotiation of their automobile until after they had gotten into the intersection.

Several witnesses testified that after the collision the Tucker automobile turned over three or four times before it came to rest. One witness who drove his truck up on the highway about 400 feet south from this intersection testified that Tucker passed him to his left, proceeded toward the intersection driving over the center line of the paved road, and that he had turned in ahead of the automobile driven by the Avents at the time ''Mr. Fisher's car hit him.'' His evidence was that the Tucker automobile was being driven very fast, ''like a shot out of a gun.'' The two ladies proceeding south testified that the Tucker automobile, as they observed it coming toward them, ran a half a mile before they had traveled an eighth of a mile. It was not stated how fast Mrs. Townes, the driver of the automobile occupied by the ladies, was proceeding. Mrs. Equen, the other lady occupying the automobile, testified that the Avents were driving ''slowly.'' There are many contradictions in the record which we deem it unnecessary to state in view of the conclusion we have reached upon these facts.

Two reasons are assigned for the argument that appellants were entitled to a peremptory instruction: (a) that it was shown that Mrs. Avent was the guest of her husband on the occasion of this collision; and (b) that under the facts of the case the evidence and all fair inference from it show that the sole and only proxi-

mate cause of this injury was the rapid and reckless driving of the decedent.

1. (a) On the first proposition there is no question but that both the husband and wife had started in the automobile owned by the wife to Minter City to get the mail, or that they were driving together for that mutual purpose on the joint mission or venture, and it seems to us to be beyond cavil that Mrs. Avent was not the guest of her husband. We are of the opinion that the facts and law as announced in Terry v. Smylie, 161 Miss. 31, 133 So. 662, absolutely control the decision of this point. In that case two brothers were driving in an automobile. The brother who did not own it was at the steering wheel driving the other brother seated by his side. They were proceeding to take a boat to the Isle of Caprice, a pleasure resort. They were going there for recreation. In that state of facts, the court held that the owner of the car was not a mere guest, but that the relationship of master and servant existed between him and his brother, the driver thereof, and that the relationship of host and guest did not exist, and the fact that the mission on which they were embarked was not a business one did not change or alter the relationship. Also, see, Atwood v. Garcia, 167 Miss. 144, 147 So. 813. As was said in Fuller v. Metcalf, 125 Me. 77, 130 A. 875, 877, speaking of the owner of the car undertaking to claim the relationship of passenger or host: "You shall not be permitted to 'shuffle yourself down to the bottom of the pack' as a 'mere passenger' and turn up a probably impecunious and irresponsible driver as the only person subject to legal liability." Many authorities can be multiplied sustaining the view of our own court on this proposition. Avent was the agent or servant of his wife on this occasion.

2. (b) The other was that the evidence fails to show any negligence on the part of the Avents proximately causing or contributing to the injury and death of Tucker.

It is not claimed that the graveled road over which the Avents were driving their automobile was a "through"

highway. Stop signs had been erected on this graveled highway warning all motorists first to slow down, next to stop. See Chapter 200, Laws of 1938, Subdivision 3, ·Section 12 (f), in addition to that which was shown without objection or contradiction that the paved Highway 49E was a through highway. It seems to be the idea of the writers of the briefs filed on behalf of the appellant in this case that the driver of an automobile having stopped at the intersection at the stop sign—here 49 feet from the intersection—has discharged his full duty to himself from suicide and to the traveling public on a through highway. We want to emphatically state that no opinion of this court has ever absolved the driver of a motor vehicle from exercising care and diligence when proceeding upon a crossing which is much traveled, and at which people are known to travel at a high rate of speed, and if there were no statute in force in this state, common sense would dictate that no driver of an automobile should enter upon an intersection of a much-traveled highway without first ascertaining before it is too late as to the safety of the venture.

But the statute in force at the time of this collision applicable hereto, Chapter 200, Laws of 1938, Section 72 (a) is as follows: "The driver of a vehicle shall stop as required by this act at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway." There might be confusion in the construction of the statute just quoted, but Subsection (b) which immediately follows the quotation begins with this significant statement: "The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an

intersection where a stop sign is erected at one or more entrances thereto," etc. It is then clear that the statute requires that motorists must stop and look at the intersection of a highway with a through highway.

Mr. and Mrs. Avent both testified to the fact that they were proceeding to enter upon a very dangerous crossing. It could not have been dangerous in its construction because the photographs of the crossing show that it was as nearly level with as few obstructions natural or otherwise as can be found upon a highway. It was a perfectly clear day and the only reason for danger that they could possibly have assigned was the fact of the speed of the motorists on this "through" highway.

Let it be remembered that if Tucker was driving at the maximum lawful rate of speed when he approached this crossing, he would travel in excess of 80 feet a second. If he was driving sixty miles an hour he would travel 88 feet per second. In other words, if the automobile driven by Tucker was 110 feet away when Mrs. Avent observed it, had she and her husband not proceeded into this crossing they would have known that it was hazardous to proceed to negotiate it, would have observed the speed of the automobile and the recklessness, if that be true, of Tucker. At the most it was a question for the jury to say whether or not there were such hazard in that particular split second as would relieve the Avents from negotiating the crossing without any sort of effort on their part to look to the south.

Many cases are cited, especially is the case of Coca Cola Bottling Works of Greenwood v. Hand (Miss.), 191 So. 674. In the first place, the Hand case is not applicable because the court distinctly pointed out in that case that the injured party, driver of the automobile, saw the truck for 500 feet; in the second place, it was pointed out that the driver of that car was driving so rapidly that the application of the brakes and use of the steering wheel was the sole cause of the injury; and in the next place, it was pointed out in that case that Hand's negli-

gence was the sole proximate cause of his accident. He ran across the intersection, safely passed the Coca Cola truck, and his car turned over at about 92 feet from the point, injuring him.

There is another distinction of the Hand case and the authorities mentioned therein, especially Myers v. Tims, 161 Miss. 872, 138 So. 578. This court has never held that any motorist has the right to drive as though he were blindfolded into any highway crossing, and especially would this be true where the parties are warned by a sign first to slow down, next to stop, and then the law enjoined on them that having stopped at the stop sign before they entered the actual intersection they must look and see that it would not be hazardous to an approaching automobile to proceed. No one with any judgment at all could doubt that if the law had been obeyed, and common sense had been followed, and the Avents had looked to the south before they proceeded onto that paved road, this tragedy would not have occurred.

We have not left out of view the fact that Tucker was evidently very negligent. The fact that after the collision his car proceeded 141 feet and turned over four times within that distance shows that he was traveling at a very high rate of speed, that he was not having regard to the reciprocal duty owed by him, as he approached and undertook to cross this highway, to have his car under control. Nor have we overlooked the fact that the cross road sign had been placed by the State Highway Department along the paved highway approximately 500 feet from this highway crossing. The jury could well have found that the concurrent negligence of both drivers contributed to and proximately caused this injury.

It is next insisted that because the declaration charged that Mrs. Avent drove as agent and chauffeur and that Fisher Avent rode on the back seat as the owner of the car, it is a fatal variance from the proof which was

converse to the allegation. In the first place, early in the trial Fisher Avent and his wife testified to these facts. Both of them were liable on the theory of the declaration, and the proof did not change the degree of liability. We have already seen and we cannot say that the switching of the relationship of the parties in the proof affected any injury or surprise to the appellants in this case. There is no difference of the liability of the principal and agent in this case. Appellants cannot say that they did not know these relations when they entered upon the trial. No objection was made and the point is raised now after the trial and verdict. Whatever objection there might have been, if any, is concluded by Section 568 of the Code of 1930. Appellants certainly cannot be heard to say that they were misled to their prejudice in conducting their defense.

The case of Ozen v. Sperier, 150 Miss. 458, 117 So. 117, is so entirely dissimilar and is not at all apposite to the case at bar. We really think there is no merit in this point. On a question of variance there must aways be the question of whether or not injury might have ensued, and in this case clearly there was no chance for the change of position as the relative relationship of these parties to have caused injury.

Neither do we think there is any merit in the proposition that the court erred in refusing to allow it to be shown that Mrs. Avent did not carry liability insurance.

3. The appellant offered as a witness Wise who undertook to testify that he was an expert and he could tell from an examination of the automobiles where the blame was for the injury, and in this examination, on cross-examination, he was asked these questions:

"Q. You say you are a sort of specialist and you have for years inspected wrecks for an insurance company? A. Yes, sir.

"Q. With all this vast experience, you had it in Memphis working for Insurance Companies? A. No, sir."

It had been shown that he inspected the Chrysler automobile in Memphis after the wreck. Upon redirect examination he was asked these questions by counsel for appellants who offered him as a witness, wherein this occurred:

"Q. Did you make thorough or minor inspection of it? A. I made a thorough examination on the day that the insurance company settled on it.

"Q. Settled—What do you mean? A. Settled with the owner.

"Mr. Barnett: We object to that.

"Court: Sustained."

The witness volunteered the statement that the insurance company settled. It is the contention of the appellant that this examination and the answer of the witness unexplained as to the settlement would lead the jury to think that Mrs. Avent carried liability insurance. We do not think that the questions propounded on cross-examination by counsel for the appellees in any sense provoked the redirect examination which we have quoted here. In other words, it is argued here now that the court should have permitted the jury to be informed that Mrs. Avent carried no liability insurance. In other words, the jury were to be told that whatever verdict they might render against Mrs. Avent would necessarily have to be paid by her for the reason that the plaintiff in a suit may not show that the defendant carried insurance against the particular event involved. The converse is true that it may not be conveyed to the jury that the defendant in the case has no protection by insurance, and if the verdict is against him, he, and not an insurance company, must pay it. To hold otherwise would be to abolish the rule as announced by this court in the case of Herrin, Lambert & Company v. Daly, 80 Miss. 340, 31 So. 790, 92 Am. St. Rep. 605, which has been consistently followed by this court. It would be manifestly unfair to permit a defendant in a damage suit to show

that he carried no insurance and whatever verdict was rendered would be enforced upon him personally.

4.   We have critically examined the instructions and when they are all read together, although there appears to be a word omitted from one, that same word is not omitted in a similar instruction procured by the appellant, and when they are taken as a whole they announce a correct rule of law as one instruction.

5.   It was urged on the motion for a new trial and is urged here that the verdict of the jury, $25,000, is so excessive as to evince passion and prejudice in its rendition by the jury.   On the trial the evidence showed that Tucker was thirty-four years old; that Mrs. Tucker was thirty-two; that the life expectancy of Tucker would be thirty-two and a half years; that John was eleven years of age, and Ernest six years.   Tucker's salary at the time of his death in regular employment was $175 per month with an automobile furnished him and his expenses paid by his employer; that he devoted his entire salary to the support and maintenance of his wife and children.

Without going into any calculation as to the future earnings and the loss financially of the widow and children in the case at bar, we do not believe we would be authorized to disturb the verdict on the theory that it evinces passion and preudice on the part of the jury rendering it.   Gulf & Ship Island R. Co. v. Simmons et al., 153 Miss. 327, 121 So. 144, is a case wherein Simmons' age, family, and earning capacity were about the same as Tucker's.   In this case a verdict for $20,000 was allowed to stand by this court even though the jury was instructed that Simmons was grossly negligent and that they could not allow full damages or only such as would be justified by comparison with the negligence of appellant.

In the case at bar, neither the plaintiff nor the defendant in the court below requested instructions based

upon the comparative negligence statute so that the jury in this case was not required to apportion and compare the damages on account of the negligence of the parties. We have already said that Tucker was very negligent in driving rapidly without having his car under control into and upon an intersection. We have also said that the jury was authorized to find that the Avents were negligent in driving in and upon the intersection under the circumstances without looking to the south, from which Tucker came. The jury was not directed to apportion damages as to which the court could not voluntarily instruct the jury; the plaintiff was not required by law to so instruct the jury; and the defendants saw fit not to so have the jury instructed by the court. As to whether or not the defendant chose to invoke .the comparative negligence statute, Section 511, Code of 1930, was a matter of strategy on the part of the defendant in . the court below which they determined so that this court cannot consider the comparative negligence of the parties in determining whether or not the verdict was excessive. See Mississippi Power Co. v. Thomas, 162 Miss. 734, 140 So. 227, 84 A. L. R. 679; Alabama and V. Ry. Co. v. McGee, 117 Miss. 370, 78 So. 296; Lindsey Wagon Co. v. Nix, 108 Miss. 814. 67 So. 459.

We find no reversible error.

Affirmed.