**Tom WALTON, Appellant,**

v.

**Marlen R. OWENS and Yale and Towne Manufacturing Company, Appellees.**

**No. 16287.**

United States Court of Appeals
Fifth Circuit.

May 10, 1957.

Hutcheson, Chief Judge, dissented.

J. L. Roberson, Vincent J. Brocato, Clarksdale, Miss., Roberson, Luckett & Roberson, Clarksdale, Miss., of counsel, for appellant.

E. Cage Brewer, Jr., Clarksdale, Miss., Forrest B. Jackson, Jackson, Miss., William O. Luckett, Clarksdale, Miss., Brewer & Brewer, Clarksdale, Miss., and

Jackson & Ross, Jackson, Miss.; of counsel, for appellees.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

After an adverse jury verdict for the defendant Owens in a highway intersection collision case, the plaintiff Walton appeals on the narrow ground that the Court erred in instructing the jury that the plaintiff was guilty of contributory negligence as a matter of law and, almost reversing his field, in failing to give a requested instruction on the right of way which would have made the defendant Owens guilty of negligence as a matter of law.

Considerable emphasis is made in Walton's brief on the disputed (or admitted) facts concerning Owens' conduct in driving his automobile which would warrant substantial inferences of negligence. But these, submitted to the jury without exception as to adequacy or correctness, Fed.Rules Civ.Proc. rule 51, 28 U.S.C.A., were resolved in Owens' favor by the defendant's verdict. If the requested charge should have been given, the defendant's verdict would fall for want of proper submission. If, however, refusal was proper, much doubt exists that the peremptory instruction that plaintiff Walton was guilty of contributory negligence as a matter of law, even if erroneous, could be harmful error, FRCP 61, since the jury's verdict under the Mississippi Rule of Comparative Negligence, Miss.Code Anno.1942, § 1454, was a finding of zero negligence [1] against defendant Owens.

But disregarding this, and assuming arguendo that an erroneous peremptory instruction of negligence on the part of the plaintiff would, or might, have an indeterminable effect on the process of the jury's reasoning in assaying the rea-

sonableness of Owens' conduct, we conclude that the instruction was correct because of inescapable negligence on Walton's part.

The facts are as simple as the results are tragic. The main concrete highway, U. S. 61, runs north and south. A macadam-topped rural road intersects it running east-west from Lula to Rich, Mississippi. The main highway was "protected" by vehicle stop signs at the Lula-Rich Road intersection. While the Lula Road, in the 100 feet approach from the east, gradually inclined about 7 feet so that a car proceeding south on U. S. 61 from the north might not see a vehicle coming from the east, once a westbound car got to the stop sign (20 feet or so east of the concrete slab of U. S. 61), the photographs show an unobstructed view up the highway for well over a quarter of a mile.

Mr. Walton, 73 years of age, with a lifetime familiarity with this crossing, was proceeding west on the Lula-Rich Road. Owens, at a speed estimated at 50 to 60 m. p. h. was coming south on U. S. 61. The contact was between the left front end of Owens' car and the right front end of Walton's car. The initial impact occurred either on the extreme west edge of the concrete slab or between there and a point of some 20 feet to the west of it as Owens' car, in the jaws of collision, swerved to the right.

Traumatic amnesia obliterated Walton's recollection so that the position and movement of the two vehicles, as well as Walton's estimate of the situation as he proceeded out into the intersection, must be established objectively through the testimony of Owens, an interested party, and three disinterested eyewitnesses. According to Owens, when 300 feet from the intersection and making 55 to 60 m. p. h., he saw the Walton car about 125 feet east of the intersection proceeding west in such a way as to indicate that it would not stop. Conse-

---

1. The defendant's verdict cannot be explained by an inferential finding of no damage since the Court properly instructed the jury that at least $4,990.-

74 in medical, hospital bills was without controversy as to loss and causal relation.

quently, he reduced his speed momentarily, but then increased it to about 50 m. p. h. when it appeared that Walton was actually going to stop. Proceeding on with attention momentarily directed toward his right side, Owens next observed the Walton car when he was approximately 60 feet north of the intersection and the Walton car 20 to 30 feet east of U. S. 61. At that moment the Walton car "seemed like it speeded up" whereupon Owens threw on his brakes, pulled toward the right shoulder and into the intersection but collision resulted. The whole occurrence was observed by Pilkington, a civil engineer, and his helper Woodward, also traveling south on U. S. 61 at a distance, he fixed, of approximately 500 feet behind Owens. Pilkington fixed his own speed with certainty at 55 m. p. h. as he had just completed a speed check run on the Mississippi highway test section when Owens overtook him at a slightly greater speed. When 700 feet from the intersection, Pilkington sensed and spontaneously exclaimed to Woodward that "trouble was ahead" and, with the precision of his calling, began taking note of significant facts which he recorded in a detailed statement practically unassailed by either party and which was the real body of his deposition testimony. He stated positively that, with Owens 500 feet ahead of his position, then 700 feet from the intersection, the Walton car, proceeding west at approximately 25 m. p. h., pulled right out into the intersection without stopping. Immediately it appeared to him as though the brakes on Owens' car had been applied and the driver was turning the car toward the right to avoid a broadside collision.

The version of "Uncle Ed" Adams, an ancient cotton picker working in a field north and east of the intersection, was contradictory in one significant point. For his testimony was positive that while picking cotton, he happened to look up and saw the Walton car stopped at the stop sign. About the same time he noticed the other (Owens') car running "fast" down U. S. 61 near the Pan-Am filling station. He stooped down to resume work, shortly heard the crash, looked up and saw Mr. and Mrs. Walton's bodies hurtling through the air. He expressly disclaimed knowledge of the length of time Walton remained stopped at the stop sign or the distance away of the Owens' car as Walton started up.

In appraising the appeal, it is plain to us, as it must have been to the jury, that the Judge's instruction of contributory negligence of Walton was not in disregard of the conflict in the evidence on whether Walton stopped at the stop sign. An isolated portion [2] affords literal support to Walton's contrary contention, but the careful charge as a whole reflects that the Court was of the legal opinion that if and as he stopped,[3] he did not stop long enough and, after stopping, he had darted out into the intersection without a proper regard [4] to oncoming traf-

---

2. The Court stated: "It seems to me under this evidence * * * that it is my duty to charge you that Mr. Walton was guilty of some negligence in this matter in driving out on the highway with a car approaching as this car was, without stopping or probably looking more than he did. That, however, would not bar a recovery on his part."

3. A few lines immediately preceding the peremptory instruction, note 2, supra, the Court discussed the conflict on stopping: "The only witness who testified for the plaintiff, who saw the situation, was the old colored man ["Uncle Ed" Adams] who said he was down there pick-

ing cotton. He says some little distance back from the intersection. Mr. Walton did stop, but he then begun to proceed across the highway, going at a speed of some 20 to 25 miles an hour, and that he didn't actually see the impact * * *."

4. Subsequent to the peremptory language, note 2, supra, the Court instructed: "It is the duty of a man traveling on a highway, in the first place, a man who approaches a main highway where there is a stop sign to stop and look and not go out into the crossing, if it creates à hazard by doing that. It is his duty to see and observe any oncoming traffic, and

fic and at a time when Owens' car was too close.

It is at this point that giving the peremptory instruction and the refusal of the requested one present the common basic issue of Mississippi law. For if, as the requested issue stated,[5] the right of way is simply a question of who first gets into the intersection with the legal duty then automatically shifting to the approaching automobile to give way and stay clear, the Court erred in doing both.

■ While the requested charge, note 5, supra, is a paraphrase of Jefferson Funeral Home v. Pinson, 219 Miss. 427, 69 So.2d 234, the facts in that case, the Mississippi Statute [6] and the many other decisions [7] of the Supreme Court of Mississippi make it quite clear that Mis-

sissippi does not regard it as a mere race for an imaginary intersectional line, or that, having stopped momentarily, the driver " * * * has discharged his full duty to himself from suicide and to the traveling public on a through highway * * *," or that this gives the motorist " * * * the right to drive as though he were blindfolded into any highway crossing * * *," Avent v. Tucker, 188 Miss. 207, 194 So. 596, 600, 601.

■ It may be that confusion arises from the awkward expressions used in some opinions, but this seems an unavoidable result of a statutory scheme which defines two classes of persons traveling on a through highway who have the right of way: [1] one who has already entered the intersection and [2] one who

---

determine if it is sufficiently far away that his going out on the highway would not create a hazard * * *.

\* \* \* \* \* \*

" * * * I think Mr.Walton is clearly guilty of negligence under the testimony here, having driven out on the road without proper observance of what the situation was, but that does not bar him from a recovery. It would merely reduce the damage to which he was entitled."

5. The requested instruction read (emphasis supplied):
    "The Court instructs the jury for the plaintiff that the driver of a vehicle approaching an intersection is under the duty to yield the right of way to a vehicle which *has entered* the intersection from a different street, and, therefore, the Court tells you that, if you find from the preponderance of the evidence in this case that the car driven by Mr. Walton *had already entered* the intersection of Highway 61 and the Lulu-Rich road while the car driven by Owens was *still approaching same*, then, as a matter of law, the driver of the Owens car was under duty to yield the right of way to the Walton car, and, if Owens failed to do so, he was guilty of negligence. And the Court tells you that, if you find the driver of the Owens car to have been guilty of such negligence and such negligence proximately caused or proximately contributed to the collision and the injuries to Mr. Walton, then it is your sworn duty, as jurors, to find for the plaintiff."

6. Section 8197, Mississippi Code, 1942. To show dual requirements we have, as in note 8, post, interpolated numbers in brackets [ ]:
    "§ 8197. Vehicle entering through highway or stop intersection.—(a) The driver of a vehicle shall *stop* as required by this Act at the entrance to a through highway and shall *yield* the right of way to other vehicles which [1] have entered the intersection from said through highway or [2] which are approaching so closely on said through highway as to *constitute an immediate hazard*, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.
    "(b) The driver of a vehicle shall likewise *stop* in obedience to a *stop sign* as required herein at an *intersection* where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles [1] not so obliged to stop which are within the intersection or [2] approaching so closely as to *constitute an immediate hazard*, but may then proceed." (Emphasis supplied.)

7. Avent v. Tucker, 188 Miss. 207, 194 So. 596; Jones v. Carter, 192 Miss. 603, 7 So.2d 519, 2nd appeal, 195 Misc. 182, 13 So.2d 623; Baird v. Harrington, 202 Miss. 112, 30 So.2d 82; Coca Cola Bottling Works of Greenwood v. Hand, 186 Miss. 893, 191 So. 674.

is then approaching so closely to the intersection as to constitute an immediate hazard if the other car were to attempt to proceed through the intersection. But when carefully read,[8] these decisions definitely hold that a person either at or then entering an intersection to cross a through highway has no right of way, and, indeed, must yield to another car farther from the intersection but yet so close as to present a hazardous situation.

Of course, the requested instruction, note 5, supra, makes no provision for the second element. On the contrary, it categorically gives an absolute right of way to the vehicle first nosing beyond the line. And here it would have permitted—indeed have required—holding the defendant (Owens) guilty of negligence as a matter of law even though, when Walton entered the intersection, the jury could have found that Owens was then so close at hand that he could not possibly have stopped or averted collision.

■ There was therefore no error in refusing it as such, and being itself imperfect, it is ineffectual as an exception or a statement of reasons, FRCP 51, to the charge as a whole, Travelers Indemnity Co. v. Bengtson, 5 Cir., 231 F.2d 263.

This means also that the Judge, as a premise for the peremptory instruction,

was likewise eminently right in concluding that an obligation rested on Walton not to attempt to cross the intersection if the approaching (Owens) vehicle was then in the zone of danger. The question then became, not the narrow factual one of mere stopping which the jury could resolve in Walton's favor, but whether, in that situation, a prudent person could reasonably have thought that attempting, after first stopping to cross would not "constitute an immediate hazard."

■ Here, evidence intrinsically persuasive coming from disinterested witnesses of unimpeached reliability reciting facts contemporaneously observed from an ideal vantage point, nowhere contradicted and hence binding on court and jury alike, United States v. Johnson, 5 Cir., 208 F.2d 729; N. L. R. B. v. Ray Smith Transport Co., 5 Cir., 193 F.2d 142; Deitz v. Greyhound Corp., 5 Cir., 234 F.2d 327, certiorari denied 352 U.S. 918, 77 S.Ct. 218, 1 L.Ed.2d 124; Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct 391, 77 L.Ed. 819, established that Walton, either without looking or, if looking without heeding, proceeded across the path of an automobile then but a few seconds away. Pilkington and Woodward fixed Owens' car at 200 feet from the intersection

8. See, e.g., Jones v. Carter, 192 Miss. 603, 7 So.2d 519, at 520, as in note 6, supra, in which we have interpolated in brackets [ ] this dual requirement:

"Sections 70(a) [8195, Code 1942], 72(a) [8197, Code 1942], 73 [8198, Code 1942] of Chapter 200, Laws of 1938, requiring the driver of a vehicle to stop at the entrance to a through highway and yield the right-of-way to other vehicles which have [1] entered the intersection from said highway or [2] which are approaching so closely from said through highway as to constitute an immediate hazard have no application to a case where the driver of a vehicle comes to the entrance to a through highway and has entered into the intersection before it has been entered by a vehicle from said through highway or has entered thereon before a vehicle on the through highway has approached so closely as to constitute an immediate hazard. On the contrary, the question of liability is controlled in such case by the principles announced in the cases of: Myers v. Tims, 161 Miss. 872, 138 So. 578; Gough v. Harrington, 163 Miss. 393, 141 So. 280; Whatley v. Boolas, 180 Miss. 372, 177 So. 1; and Coca Cola Bottling Works of Greenwood v. Hand, 186 Miss. 893, 191 So. 674. In other words, the statute of 1938 * * * does not require the driver of a vehicle who has already entered onto an intersection with a through highway to yield the right-of-way to an approaching vehicle which has neither [1] entered the intersection nor [2] approached so closely thereto from said through highway as to constitute an immediate hazard. * * * Section 73 of Chapter 200, Laws of 1938, supra, is to be construed in connection with Section 72(a) thereof governing the rights and obligations of drivers of vehicles when reaching the entrance to a through highway."

when Walton's vehicle came across, and whether the distance was precisely this or somewhat more or less (Owens himself put the greatest distance at 300 feet when he first saw Walton), the situation was such that from this ringside seat, Pilkington instantaneously and correctly sized it up as impending danger and exclaimed, " * * * that trouble was ahead * * *." Whether Owens' speed was then in the neighborhood of 50 to 60 m.p.h. as he and Pilkington estimate, or was, as Walton claims the inferences would reasonably support, much greater, the uncontradicted fact is that Walton, at a much lower speed, set out to traverse a distance of some 40 to 60 feet when, at best, the oncoming car was but two or three seconds away.[9]

That the final impact may have occurred 20 feet west of the concrete slab of U. S. 61 (and not, as some fixed it, at the west edge of the slab) does not on this record prove that Walton nearly made it, and hence had sufficient time to attempt the crossing. For on the uncontradicted testimony of eyewitness Pilkington corroborating Owens and Woodward as well, it was established that as Walton kept coming across, Owens' car was pulled to the right apparently to avoid a broadside collision which was then imminent. And, in any case, " * * the rule of prudence is not tested by the providential fortune of the careless or foolhardy," Deitz v. Greyhound Corporation, 5 Cir., 234 F.2d 327, 334, certiorari denied 352 U.S. 918, 77 S.Ct. 218, 1 L.Ed.2d 124.

We need not engage in precise calculation on the variables which the factual proof of this record of time, distance, and speed permits to demonstrate just how many feet per second each one traveled, or had to travel, how far in time and distance, each was at any given moment away from disaster or eternity. It is necessary only to recognize that with this limited period of two to four seconds and a distance of 300 feet which was rapidly closing, Mr. Walton was running an obvious risk to his own and Owens' safety. Nothing in the evidence, direct or inferential, justifies any conclusion that Walton either had, or thought he had, time enough to make this crossing without putting himself or Owens in peril.

Reasonable men could not conclude that safety on the highway, which is the object of the Mississippi Statutes and decisional law, would permit a person to take such chances in the optimistic expectation or hope that, while shaving it closely, speed, power, skill, or good fortune would let it suceed.

Affirmed.

HUTCHESON, Chief Judge (dissenting).

I agree with the majority that the refusal of plaintiff's requested charge was not error. I cannot, however, agree with its conclusion that it was not prejudicial error to instruct the jury that "Mr. Walton was guilty of some negligence in this matter in driving out on the highway with a car approaching as this car was, without stopping or probably looking more than he did."

In Mississippi, as in Georgia, "questions of negligence and comparative negligence and of what constitutes the proximate cause of the injury are ordinarily questions of fact for the jury, and their determination will not be taken from it except in palpably clear, plain and undisputed cases where the facts are established without conflict and as matter of law." Petroleum Carrier Corp. v. Carter, 5 Cir., 233 F.2d 402, at page 405.

It seems plain to me that while, regarded as a factual discussion of the weight and preponderance of the evidence, the discussion of this point by the majority is excellent and most persuasive,

---

**9.** Ironically, from Walton's point of view, his conduct becomes more unreasonable as the speed of Owens' car is increased or as he starts across from a standing stop, as he claims, rather than by an uninterrupted movement at 25 to 30 m.p.h.

it falls far short of convincing that the issue was one of law for the court rather than of fact for the jury. I, therefore, respectfully dissent from the affirmance of the judgment.