**Varnie J. DENTON, Appellant,**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

No. 16295.

United States Court of Appeals Fifth Circuit.

Feb. 1, 1957.

Wm. J. Fleniken, Shreveport, La., for appellant.

Harry A. Johnson, Jr., Shreveport, La., Lunn, Irion, Switzer, Trichel & Johnson, of counsel, Shreveport, La., for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

Appellant, Varnie J. Denton (plaintiff), brought this civil action against appellee, Indemnity Insurance Company of North America, automobile liability insurer of Earl J. Blake (defendant), for personal injuries received by plaintiff in a collision at a street intersection in the City of Shreveport, Louisiana, November 23, 1953. On March 22, 1956 the Court below submitted the questions of negligence on the part of the insured and contributory negligence of plaintiff to the jury, which returned a verdict in plaintiff's favor for $2,200.00. Upon motion of the defendant, the Court below entered judgment notwithstanding the verdict in the defendant's favor, assigning as the basis therefor that plaintiff was guilty of contributory negligence as a matter of law.[1] This appeal brings in question the correctness of that action.

---

[1] "A motion for * * * a judgment notwithstanding the verdict under Rule of Civil Procedure 50, 28 U.S.C.A., raises a question of law only: Whether there

■ In our opinion, it was error for the Court below to enter this judgment because we find that there was credible evidence upon which the verdict of the jury can rest in its decision in favor of plaintiff on the question of contributory negligence. That evidence, briefly stated, is this:

Plaintiff was driving his Kaiser automobile before sunup north along Dowdell Street when insured's car, driven by his wife, struck it about even with the right front wheel with such force as to throw his passenger and plaintiff out of the right front door of the Kaiser, killing the passenger and seriously injuring plaintiff. Insured's car, a Lincoln, was being operated west along Seventy-fifth Street.[2] Both streets were paved with an asphalt type pavement, but without curbs, and the parallelogram formed by their intersection was twenty-three feet north and south, and twenty-one feet four inches east and west. The collision took place in the northeast quarter thereof.

The only eye witnesses were plaintiff and the insured and his wife, and they differed sharply concerning the facts of the accident. The traffic officers were there in a short while, however, and by reason of the frosted condition of the streets, they were able to locate with accuracy the point of impact by the skidmarks and other physical manifestations.

■ Plaintiff was driving somewhere near the center of Dowdell Street and reduced his speed to about ten miles per hour as he approached Seventy-fifth Street. He looked to his right, east along Seventy-fifth Street, and was able to see about one-half block and saw no car approaching and he thereupon entered and preempted the intersection and was driving between ten and twenty miles per hour at the time of the impact. He had passed several feet beyond the center of Seventy-fifth Street which meant that his car had traveled eleven and one-half feet to the center and several feet beyond, when the impact took place.[3] The Lincoln had then traveled several feet less than the ten feet eight inches representing one-half the width of Dowdell Street, and the skidmark made before the impact by its left front tire measured twelve feet, which meant that the Lincoln began skidding before entering the intersection.

The Kaiser was knocked sharply to its left, its forward motion being stopped immediately; and its direction was practically reversed and it came to rest forty-four feet from the point of impact. The Lincoln changed its direction only slightly and moved seventy-seven feet after the impact, crossing the drainage ditch and the sidewalk, and stopping in the yard of a private residence which the photographs show to be quite a bit elevated above the streets. While insured and his wife claimed that the Lincoln came to a virtual stop before entering Dowdell Street and was moving at a very slow rate of speed, the physical facts shown by the photographs of the skidmarks and of the damage to the cars demonstrate that the Lincoln was being driven at a very rapid and negligent rate of speed.

The action of the Court below in holding plaintiff guilty of contributory negligence as a matter of law was based doubtless on photographs of the Kaiser automobile taken less than an hour after the collision and the testimony of the photographer and of a police officer that

---

is any evidence which, if believed, would authorize a verdict against movant." Marsh v. Illinois Central Railroad Co., 5 Cir., 1949, 175 F.2d 498, 500; and see Continental Casualty Co. v. Quebedeaux, 5 Cir., 1956, 234 F.2d 241, 243.

2. The correct title is West Seventy-fifth Street, but the West is being dropped to avoid confusion.

3. Under Louisiana decisions he had preempted the intersection and had the right of way. Thomas v. Checker Cab Co., 1956, 229 La. 1079, 87 So.2d 605; and Booth v. Columbia Casualty Co., 1955, 227 La. 932, 80 So.2d 869.

it was practically impossible to see through its glasses. It was also proven that the plaintiff had installed a piece of cardboard in place of the glass which was broken out of the front half of the up-and-down window in the right front door of the Kaiser.

The photographs of the Kaiser do show a white substance on the top resembling snow and a definitely frosted condition of the windshield and all of the glasses. But the rear-view mirror is plainly visible in the pictures taken through the windshield from the outside of the car. The photographer's testimony was to the effect that, from the inside of the car, he could see out of no portion of the glass except a space on the driver's side of the windshield about the size of a basketball, and the window glass on the driver's side. As against that testimony, the photographs do not show that there was any marked difference between the right and the left segments of the windshield and, if anything, they show that the window glass on the driver's side was the most frosted of all. The photographs and the photographer's testimony lose some of their weight in view of the lapse of time between the accident and the time when the inspection and photographs were made.

Plaintiff testified categorically that, before leaving home, he had washed the windshield and some of the other glasses with warm water and had dried them off with a soft rag. And he had admittedly driven the car through traffic a distance of about eighteen blocks before the accident. He further testified unequivocally that he looked east up Seventy-fifth Street and that he could see a half block and that the Lincoln had not reached that point when he entered the intersection. One of the photographs shows the ventilator or wing on the right front door of the Kaiser to be partly open, and plaintiff could have had a view up Seventy-fifth Street through that open ventilator.

At all events, the testimony of the photographer and the evidence furnished by the photographs are not sufficient to warrant total rejection of plaintiff's testimony or the repudiation of the inferences the jury manifestly drew from it and the other countervailing evidence and circumstances mentioned. We are of the opinion, therefore, that the Court ought to have entered judgment on the jury's verdict and not one in contravention of it. For the entry of such a judgment, Continental Casualty Co. v. Quebedeaux, supra, the case is

Reversed and remanded.