**PHŒNIX INDEMNITY COMPANY of NEW YORK, Appellant,**

v.

**Manning L. GIROUARD, Appellee.**

**No. 16680.**

United States Court of Appeals Fifth Circuit.

Feb. 14, 1958.

Rehearing Denied March 27, 1958.

Donald Labbe, Lafayette, La., Richard B. Montgomery, Jr., New Orleans, La., for appellant.

J. J. Davidson, Jr., Douglas J. Nehrbass, Lafayette, La., Davidson, Meaux, Onebane & Nehrbass, Lafayette, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal seeks a reversal of the judgment of the trial court based on the verdict of a jury in a personal injury damage suit on the sole ground that the trial court should have held as a matter of law that the plaintiff-appellee was guilty of negligence which, at least partially, contributed to cause the accident.

Recognizing full well the difficulty of presenting a situation which requires the court to take from the jury the questions of plaintiff's negligence and of causation, appellant nevertheless asserts that this is the exceptional case. We do not think so.

■ Viewing the appellee's evidence from the strongest possible viewpoint, as we are required to do when it is claimed that the evidence does not support a jury verdict, we find the following:

The plaintiff was driving a delivery truck as he approached the intersection of Azalea Street, on which he was traveling eastward, and St. Thomas Street, from which the defendant's truck struck him from his right; he had just stopped to make a delivery at the second house from the corner and his next stop was the first house after he would cross St. Thomas Street. He stopped his truck when he had driven up "where I could see good enough" (later he stated this was three feet back from the intersection). He looked to the right and started off "when I saw the road was clear." When he was within about three feet from the opposite side of St. Thomas Street his truck was hit on the right rear, behind the rear wheel, knocked some 21 feet and he was thrown out and severely injured; he could see several hundred feet to his right; (in response to a question by the judge, he said: *"I should say about* 400 feet."); the laundry truck that hit the plaintiff's vehicle came from the right in excess of the legal speed limit of 25 miles per hour (the driver testified to 25 miles per hour and that he was 35 feet from the intersection, whereas the physical evidence shows skid marks for his truck of 54 feet before striking the plaintiff's truck, which was then knocked over by the remaining force of the collision); defendant's driver gave no signal, and his truck had no horn.

■ Appellant's argument is premised on the assumption that either plaintiff did not look to the right before entering the intersection, or, if he did, he failed to observe defendant's truck, which, so defendant claims, must have been not more than 100 feet away. We must take as true the facts and the inferences that may properly be drawn therefrom that most favor the plaintiff. When we do so it is plain that the jury could absolve the plaintiff from contributory negligence. After he stopped, looked, and saw nothing, he started up and proceeded 27 or 28 feet. If he jumped instantly up to 5 miles per hour without any time for shifting gears or reacting or making his decision to proceed, it would still take him nearly four seconds to get to the point where he was struck. The jury need not have believed that he, without even a split second's delay, from a complete stop jumped his truck up to five miles per hour in order to traverse the entire intersection at that speed; of course it is mathematically impossible "to start at five miles per hour." Within five seconds the other driver could have driven nearly 300 feet at 45 miles an hour and nearly 360 feet at 55 miles per hour. The jury could certainly find from the fact that the defendant's truck skidded 54 feet into the plaintiff's vehicle and then knocked it 21 feet that it was traveling at a rate of as much as 55 to 60 miles an hour. Moreover, the plaintiff's testimony as to the distance he was able to see to the south was, on its face, only an approximation. From a point three feet back from the intersection, with the photographs and diagrams before them, the jury may well have believed that he could see only 300 feet or even less, making even more plausible their finding that he was not guilty of contributory negligence. Incidentally, the proof is that the defendant's truck did not have a horn.

The jury might well have believed that if defendant's driver had blown a signal, plaintiff, who had avoided the path of the oncoming car by all but 2½ feet, could well have accelerated his speed and avoided the accident completely. If such had been the case they could have found that any pre-existing negligence of plaintiff, had they found any, would not have been a contributing cause of the accident.

■■ We think this case is squarely ruled by Denton v. Indemnity Insurance Company of North America, 5 Cir., 240 F.2d 604, a Louisiana intersection case. There, too, the plaintiff, whom the trial court found guilty of contributory negligence as a matter of law, testified that he had looked to his right and that he could see half a block and that he did not see the defendant's car which later struck him. This Court reversed for a reinstatement of the jury verdict. We think that case makes it clear that whether one vehicle enters an unprotected intersection sufficiently in advance of another to pre-empt the intersection under Louisiana Law, is and must be one of fact for the jury to pass on unless it can be demonstrated by almost mathematical accuracy that only one result is possible. See Thomas v. Checker Cab Company of New Orleans, 229 La. 1079, 87 So.2d 605. There is nothing in the Mississippi comparative negligence case of Walton v. Owens, 5 Cir., 244 F.2d 383, in conflict with this.

There is no merit in appellant's contention that the trial court was required to set aside the verdict and grant a new trial because the judge stated that as trier of the facts he would have reached a different result. As the trial court said in overruling the motion for new trial:

"The question is not what I would have done had I been a member of the jury, or what a Louisiana trial court sitting without a jury would have done, or even what the Supreme Court of Louisiana would have done in reviewing both the law and the facts. The question before me is: Is the verdict clearly or decidedly against the weight of the evidence? I do not think so. I am not free to re-weigh the evidence and set aside the verdict and grant a new trial merely because I feel that other results are more reasonable."

■■ The power of the trial court to grant a new trial is, of course, discretionary, and except in case of clear abuse, that discretion will not be controlled on appeal.

"Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice.

"It is equally well settled, however, that the granting or refusing of a new trial is a matter resting in the sound discretion of the trial judge, and that his action thereon is not reviewable upon appeals save in the most exceptional circumstances." Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 354.

See also Marsh v. Illinois Central Railroad Co., 5 Cir., 175 F.2d 498.

Here the trial judge did not state that the verdict was contrary to the overwhelming weight of the evidence or even that it was clearly and decidedly wrong, thus indicating that he failed to apply the proper legal standard in exercising his discretion. To the contrary he showed that he clearly understood the proper standard for granting a new trial and in his discretion declined to do so.

The judgment is affirmed.